## CRAIG v. HONE.

H. H. was one of the children and heirs of J. H. deceased. The latter, by will, devised all his real and personal estate to his executors; upon trust to convert the personalty into cash and invest the proceeds; and to lease such part of the real estate as was situated within the city of New York, and, if deemed discreet, to sell that part of it which was out of the city. The rents and profits (to be received by his executors) were to form one general fund. An annuity and some legacies were given out of it; and all the residue of income of this general fund was to be divided equally among the heirs, who were named (among them, the above H. H.) and to be paid to them upon their own receipts. Upon the decease of either of the testator's sons before a partition, thereafter directed, leaving issue, such sons had power to appoint, by will, as to their proportions of the income; should either son die intestate leaving issue, then the same was to be paid to their respective widows for the support of themselves and their children; and if no widows survived them, then to the guardians of the children. After the expiration of twenty-one years from the date of the will and as soon as the executors should then deem it discreet, all the estate, real and personal, was to be divided, by the executors, among the testator's heirs or their legal representatives, the latter to take the share of their ancestor. In making partition, if both parents were dead and their children had attained the age of twenty-one years or were married, the share of the parent was to be partitioned amongst such children and paid over; and those who had not attained such age or were not married, their shares were to be invested and leased until such period or marriage and the dividends, &c. paid to their guardians. In making the partition, if both parents were alive and had issue, then, with regard to the personal estate forming the share of such parent (heir of the testator,) the executors were to invest the same under the direction of the parent and pay it into the hands of the latter; and the real estate, forming the share of such parent, was to be leased during his life and the rents to be paid in like manner to him—and upon the decease of both parents, the personal property was to be paid over and the real estate divided as before directed in the case of the death of both parents before partition. In making the partition, where both parents were dead leaving no issue, the share of real and personal property, which would have fallen to the parent, was then to be distributed, according to the statute of distributions, among the testator's surviving children and their legal representatives. Two of the testator's heirs were appointed executors—one of them being the *cestui que trust* H. H. *Held,* that the absolute ownership of the personal estate was unduly suspended; and it was not an answer to the objection founded upon the statute to say that the events provided for might not arise. Also, that as H. H. was, here, a trustee as well as a *cestui que trust*, the trust, as to him, could not be supported.

Even if the trusts could be considered valid, H. H. had an interest which was liable to his creditors and the same could be reached by a judgment creditor. The exception in the statute relating to creditors bills (as to funds held in trust and proceeding "from some person other than the defendant himself") has relation to trusts authorized to be created for the benefit of the unfortunate, the infirm and the helpless and where the property has been placed in the hands of a trustee for the purpose of putting it beyond the reach of the *cestui que trust* or creditors.

A judgment creditor's bill, filed after an execution had been returned unsatisfied.

The object of it was to reach the share and interest of the debtor in the estate left by his father, John Hone, deceased:

and to have it applied, as far as might be necessary, to the payment and satisfaction of the complainant's judgment. And for this purpose, the bill set out the will of John Hone, dated on the thirty-first day of July, one thousand eight hundred and thirty, by which the testator had devised all his estate, real and personal, to his executors, in joint tenancy, or to such of them as might take the office. The declared purposes of the devise to the executors were, that they should convert all his personal property into cash with all convenient speed after his decease (except what he had otherwise specifically disposed of;) and invest the proceeds in bonds and mortgages or stock of the United States. And with respect to his real estate, they were to let, lease and demise all his real estate in the city of New York in such manner as to yield the largest income. And after one year from his decease, if they should deem it discreet, they had power to sell all his real estate lying out of the city of New York; and invest the proceeds thereof in bonds and mortgages or stock of the United States or of the state of New York, to the end that the rents and profits, interest and dividends, accruing from his whole estate, might form one general fund for the purposes of the will. The fifth clause of the will then directs the executors, out of the fund so created, to pay unto his wife an annuity during life and another, of a small amount, to another person; and, by a codicil, several legacies given to grandchildren are also to be paid out of the fund. The executors are then to divide all the residue of the income, from time to time, as it might accrue equally among his heirs, naming them, that is to say, the whole of the said income, after deducting the annuities and legacies, is to be divided into nine equal parts, one of which is to be paid to each of his children (the defendant, Henry Hone, being one of them) or their several legal representatives. Some grand-children, who are children of two deceased sons of the testator, come in for two of the ninth parts.

The sixth clause of the will directs the executors to pay the said several shares of the income to the parties severally entitled in quarter-yearly payments until a partition of the estate, as afterwards directed. Such payments to be made

to his sons upon their own receipts and to his daughters upon their receipts, notwithstanding coverture—while the income of the shares going to his grand-children are to be paid during their minorities upon the receipt of their mother or legal guardian and upon their own receipts when they become of age. By the seventh clause, the will directs that, upon the decease of his sons or either of them leaving issue and before the partition afterwards directed, the proportion of the income directed to be paid to his sons respectively shall then be paid in such way as such son dying should, in and by his last will and testament, direct; and should a son or sons die intestate leaving issue, then the same to be paid to his or their respective widows for their support and the support and education of their children respectively. If there be no widow surviving a son then to be paid into the hands of a guardian of the children to be duly appointed—and so with respect to the shares of daughters in case of death before partition leaving issue, the same to go to their husbands surviving; and if husbands be dead, then to the children or their guardians.

In the eight section: After the expiration of twenty-one years from the date of the will and as soon as the executors shall then deem it discreet, all the estate, real and personal, to be divided by the executors or the survivors or survivor of them among his said heirs or their legal representatives, such legal representatives to take such share only among themselves as their immediate ancestor would have been entitled to, if living. The ninth clause contains directions to be observed in carrying the partition into effect; first, where the real estate is so circumstanced that an equal partition can be made without converting the same into cash, a sale is to be avoided—and, second, in making the partition of both real and personal estate, if both parents be dead and their children or any of them have attained twenty-one years of age or are married, the share which would have fallen to the parent shall be equally partitioned among the children of the deceased parent, and as to such as shall have attained the age of twenty-one years or are married, the fee of such real estate as may fall to them is to be conveyed accordingly, and such part of the personal, as may fall

to them respectively, to be paid over. And as to such as may not then be of age and unmarried, their respective shares of the personal are to be invested on bond and mortgage or in stock; and their shares of the real estate to be leased until they attain the age of twenty-one years or marry—and the dividends, interest and profits to be paid to them or their guardians in the mean time—and when either of those events happen, their shares of the personalty are to be paid over and, of the realty, to be conveyed in fee. Third, in making the partition, if both parents are alive and have issue, then, with regard to the personal estate forming the share of such parent (son or daughter of the testator) the executors are to invest the same under the direction of his son or daughter, on bonds and mortgages or in stocks, so as to yield the largest income, and pay the same into the hands of such his son or daughter quarterly in the same manner as directed with regard to payments of the income to be made before partition. The real estate, forming the share of such parent son or daughter, is to be leased by the executors during the life of such parent and they are to pay the rents in like manner to him or her—such payments, in the event of the death of such son or daughter leaving a widow or husband surviving, to be in all things regulated as above directed with reference to the payment of the shares of such income before such partition; and upon the decease of both parents, then the personal property to be paid over and the real estate to be divided as is before directed in the case of decease of both parents before partition. Fourth, in making the partition, where both parents are dead leaving no issue surviving, the share of real and personal property which would have fallen to or might have been allotted as the share of the parent, son or daughter, should then be distributed according to the statute directing the distribution of the property of intestates among the testator's surviving children and their legal representatives. Fifth, and the same rules, in all things, were to be observed where real estate has been converted into personalty by a sale;—the interest and dividends upon investments to stand in the place of rents of the realty.

1835.

CRAIG
v.
HONE.

1836.

CRAIG
v.
HONE.

These are all the parts of the will and codicils which it becomes necessary here particularly to notice.

The testator appointed his wife an executrix and his two, sons (the defendant being one of them) and two of his sons in law, executors of his will. The complainant in his bill alleged that the debtor, Henry Hone, was entitled to. and in the receipt of a large share of the rents and income of, both the real and personal estate, and had a right to a share of the capital of the estate upon a division thereof; and of all which the complainant prayed a discovery.

The defendant, Henry Hone, demurred to so. much of the bill as sought a discovery, as well as to the relief; and as-signed for cause of demurrer, that it appeared by the bill, that such estate, property, interest, annuity, rents, issues. and profits were derived from and by means of a trust, cre-ated by or a fund held in trust, which had proceeded from a person other than the defendant, and that the bill had not made such a case as entitled the complainant to any discovery or relief in respect to any of these matters.

Mr. *Murray Hoffman*, in support of the demurrer.

Mr. *George Wood*, for the complainant.

*March* 22, 1836.

THE VICE-CHANCELLOR :—This demurrer necessarily leads to an examination of the will of the late John Hone, and of such of the provisions of the Revised Statutes as are sup-posed to be applicable to it, for the purpose of ascertaining whether the defendant has such an interest under his father's will as is liable to be applied, by the court, to the payment of debts in judgment against him—and if so, the extent of such interest ?

The will is complicated in its provisions ; and there is considerable difficulty in getting at the precise object and meaning of the testator. After a careful perusal, however, it appears to me that the following synopsis may be pre-sented as containing all that is necessary to be considered in relation to the defendant's rights and interest under the will—and which are now alone in question.

The devise is of the whole estate, real and personal, to

the executors in trust. The legal title of the lands in fee, as well as of the personal property, is vested in them in joint tenancy. The law permits the legal estate to vest where the executors or trustees are empowered, as they are in this case, to receive the rents and profits: 1 R. S. 729, § 56, 60. The lands lying out of the city of New-York are, by the directions concerning the sale and disposition of the proceeds, converted into personal property and pass as such to the trustees, upon the principle that real or personal property is to be considered as of that species into which it is directed to be converted: *Leigh & Dalzell*, 48, 59.

The income derivable from the investment of the personal property and of the proceeds of that portion of the real estate which is converted for this purpose into personal, together with the rents of the remaining real estate in the city of New-York, which the executors hold in trust, constitutes one general fund for the payment of annuities and legacies; and after such payments are made, the residue is to be divided into nine equal parts or shares. The defendant is the *cestui que trust* of one such share, which is to be paid over to him on his own receipt, from time to time, in quarter-yearly payments. The trust, in this respect, is to continue and the payments are to be made until a partition or division of the capital of the estate takes place, and which may be at any time after the lapse of twenty-one years from the date of the will. During this period, the capital of the estate, both real and personal, remains entire. It cannot be alienated.

Upon such division or partition being made, the trust still attaches to the shares in severalty. If the defendant is living at that time, the trust of the share allotted to him is to continue during his life and the life of his wife, if living; and after his death and his wife's death, then, as to the shares upon a subdivision, among his children during the minority of his children or until they respectively attain the age of twenty-one years or marry, whichever event may first happen.

The nature of the trust in relation to the personal property is that the trustees are to invest it, under his direction, in bonds and mortgages or stocks and to receive the interest

and dividends : and the real estate set apart to him in the division, the trustees are to demise and let and to collect the rents, and the rents, interest and income arising from both the real and personal property the trustees are to pay over to the parties entitled under the trust in the order of their becoming entitled and where they happen to be infants, then to their guardians.

The grand-children of the testator are the persons ultimately to take by representation or *per stirpes* : but neither the real estate nor the personal property is to vest absolutely in them in possession, nor is the trust to cease except upon the event of their attaining full age or marriage. If there should be no such grandchild living to take the share allotted to the defendant, such share is to go in the legal course of descent and distribution to the surviving children of the testator and the trust will then also terminate.

There is one clause of the will which may operate to modify, in some measure, the trust of the sons shares of the estate, consequently embracing the defendant's share. In the event of his death before partition, leaving issue, he has power to appoint, by will, as to the way in which his one ninth of the rents and income shall be disposed of; but should he die, without making such appointment, leaving issue, then such share is to be paid to his widow for her support and the support and education of their children; and if there be no widow surviving, then the same is to be paid into the hands of a guardian of the children. It is only the power of appointment which can have the effect above alluded to. In other respects, this provision appears to be in conformity with the trusts generally of the will.

The question then arises, whether the trust expressed in this will, in relation to the defendant's share of the estate, is such as the present law authorizes ?

The real and personal property are blended in the same trust ; and as far as respects the personal property, the objection to it is that it suspends the absolute ownership for a longer and different period than is allowed by law.

The statute declares that the absolute ownership of personal property shall not be suspended, by any limitation or condition whatever, for a longer period than two lives in

being at the death of the testator, where the limitation or condition is by will; and in all other respects, limitations of future or contingent interests in personal property shall be subject to the rules prescribed in relation to future estates in lands: 1 R. S. 773. Now, according to my understanding of the will, as just explained, the absolute ownership is unduly suspended.

The trust which operates as a suspension is to continue during the successive lives of the defendant and of his widow, if he shall leave one, and also during the minority of his children afterwards or until their marriage, provided events shall occur to render a trust to this extent, in point of time, necessary—such as his leaving a wife surviving him and a child or children under age and unmarried at the death of his wife. And it is no answer to the objection founded upon the statute to say that such events may not arise to render it a trust of that duration.

It is a rule of the common law that an executory devise which may postpone the vesting of an estate beyond lives in being and twenty-one years afterwards is not capable of being supported upon the possibility that the estate may vest sooner: *Griffiths* v. *Vere*, 9 Ves. 134; and so, trusts for accumulation being too remote (not within the statute 39 and 40 Geo. 3. called " The Thelluson Act") and void in their creation, are incapable of modification so as to establish them to the extent to which they might have been originally carried: *Lord Southampton* v. *The Marquiss of Hertford*, 2 Ves. & B. 54. This principle applies to the present case; and although, possibly, the will may never take effect in the way contemplated and provided for in its terms, yet, as the testator could not lawfully create such a trust in reference to his personal property, it cannot be allowed to have effect for any purpose.

It is unnecessary to examine the trusts of the will any further in relation particularly to the personal property. There are other considerations which present themselves respecting the trust in question and which can more properly be disposed of in reference to the bearing it has upon the real estate and the rents and profits forming a part of the trust fund.

VOL. II. 71

Express trusts, to be valid, must be such as are authorized by the Revised Statutes. No other can lawfully be created; and the purposes for which they may be created are specified in 55 § of the article concerning Uses and Trusts.

If the trust in question, so far as it relates to the defendant's share of the rents and profits of the real estate, comes under either head of trust mentioned in that section, it is the third: " to receive the rents and profits of land and apply them to the use of any person during the life of such person or for any shorter term, subject to the rules prescribed in the previous article on the subject of the creation and division of estates."

It is objected, in the first place, that this trust is not within the statute and cannot, therefore, be supported: because the character and object of the trust are not such as the statute contemplates; and, secondly, the extent or duration of the trust, as declared in the will, is of itself an infringement of the statute.

For a judicial exposition of this famous section of the statutes and particularly of the third subdivision in relation to the nature and object of the trust which it authorizes and was intended to embrace, I need only refer to the opinions recently delivered in the court of Errors in the case of *Coster* v. *Lorillard.*

Although there is a diversity upon some points in the opinions delivered in that case, there are certainly leading principles established by the decision which will stand as landmarks in the creation of express trusts under the third subdivision of the fifty-fifth section ; as well as in relation to the creation of estates. The principles about which the judges do not materially differ, as applicable to trusts of this class, appear to be these : that they are intended to provide for minors, married women, lunatics and spendthrifts, and, consequently, are active trusts, requiring the intervention and agency of a trustee, who is to have the whole management of the property and in whom the whole legal title and estate is to vest and where the person, for whose benefit the trust is created, shall have no estate whatever and only a right to enforce the trust in equity—that the trustee must be some third person and not the *cestui que trust* himself,

1835.

CRAIG
v.
HONE.

who, from the very nature and object of the trust and the real necessity of the case, cannot be his own trustee. To constitute the same person a trustee for his own benefit is to create a mere formal trust which is defined to be a trust where the right in equity to take the rents and profits of land is in one person as beneficial owner and the legal estate is vested in another as trustee to hold or convey as the beneficial owner may direct. The legal estate being thus in one person and the equitable estate, with the power of controling the legal estate, being in another, this kind of trust, producing, in the view of a court of equity, a separation into a legal and equitable title and estate, it was the design of the statute to eradicate and to allow no trust to be created except where the whole title and estate, both in law and equity, should vest in the trustee and where, to authorize a trust under the third subdivision of the fifty-fifth section, there must be a necessity for active duties to be performed by such trustee owing to the unfortunate condition of the person to be benefitted or a legal disability or incapacity rendering such party unfit to be trusted with the management of the property or fund.

With respect to the phraseology necessary to constitute a trust, whether it should strictly follow the words of the statute to receive the rents and profits and apply them to the use of the person in order to be valid or whether it is sufficient to authorize or direct the trustee to pay over the rents and profits, is a matter about which there is an apparent difference of opinion among the judges and which would seem to leave the point undecided.

I apprehend, however, it will be found that whenever a trust is declared which, in other respects, is clearly within the statute in its object and design, it can make little or no difference which way it is expressed, whether to apply to the use of or to pay over. The latter direction may be one mode of accomplishing and fulfilling the words of the statute in a proper case and under particular circumstances of which the court must judge.

In the Lorillard Will, the trust, as declared, was considered objectionable and unauthorized by the statute, not merely because the direction was to pay over to the *cestui*

*que trust* the shares or dividends of the rents and income, but also because the twelve nephews and nieces, who were thus provided for as beneficiaries under the trust, were themselves all trustees. This circumstance showed it to be a trust of such a character as the statute had abolished. It was in the nature of a formal trust at common law and not of a kind which the statute had authorized to be created where the whole estate vests in the trustees, requiring active duties to be performed by them in behalf of other persons not trustees, who are incompetent or unable to manage property for themselves. So, upon the same principle, the trust in the present case must be deemed invalid. The defendant, Henry Hone, is one of the trustees to whom the estate is devised, at the same time he is made a *cestui que trust* of one ninth of the rents and profits. He is, thus, in form, a trustee for himself, which is inadmissible. If he is capable of managing the property in one capacity, he is competent to be the absolute owner in another; and there is no necessity for any trust in relation to him. It is not a case, therefore, within the statute, and, of course, the trust, as to him, cannot be supported.

But supposing it to be a case in which a trust might lawfully be created and the trustee and *cestui que trust* not the same person, the other objection, which has been taken in regard to its duration, appears to be equally fatal to its validity. Trusts authorized by the third subdivision of section fifty-five, which we are considering, may be created to endure during the life or lives of the persons to be benefitted or for any shorter term, subject to the rules prescribed in relation to estates. The object of this is to limit the trusts in such a manner as that they may not operate to suspend the power of alienation beyond the period of two lives in being at the creation of the estate as prescribed in the previous article. That prohibition is held to apply to the creation of present as well as future estates. Hence a trust which would tie up the estate and prevent its alienation for more than two lives, if it were suffered to stand, is now contrary to law.

In the case of the Lorrillard Will, the trust was for the lives of twelve persons and the survivors and survivor of

1835.

CRAIG
v.
HONE.

them; and it was, consequently, held to be void as unduly suspending the aliening power upon the estate. The trust in the case now before the court is not directly or immediately for a life or lives. It is for an absolute term of twenty-one years in the first instance, during which the property cannot be partitioned or sold. This term may not extend beyond two lives; but the uncertainty, in this respect, and the possibility that it may endure longer constitutes the objection to it. Besides, the statute has not expressly authorized the creation of a trust for a gross term of years; and what the statute has not either expressly or by clear intendment authorized cannot be sanctioned. It is true, a trust may be for a life or lives " or for any shorter term:" but the term here meant is such as must necessarily fall within the period of the designated life or lives and cannot be so limited as, by possibility, to reach beyond.

In the case of *Hawley* v. *James*, before the Chancellor, 5 Paige's C. R. 318, upon the will of William James, a trust term in the whole estate was devised to trustees and which was to continue until the youngest of the testator's grandchildren, living at the date of the will and attaining the age of twenty-one years, should attain that age; and, in the mean time, there was to be no sale or division of the bulk of the estate. At the date of the will, the youngest grandchild was about one year old, so that, if he lived, the trust was to endure about twenty years. A question arose upon the validity of this trust; and the chancellor held, although with some hesitation, that such a trust term so limited as in no event to continue longer than the actual minority of infants in being at the creation of the estate and who have an interest therein either vested or contingent, is not necessarily invalid. A trust term, if created for the benefit of infants in being, who are designated in the trust and made with reference to minority and to terminate therewith or with the life or lives under age is, of course, a trust for a life or lives or for a shorter term and is, therefore, unobjectionable. But this is very different from a trust of a term in gross, as in this instance for twenty-one years absolute and without reference to lives or the minority of infants.

There are further objections to this trust, as it concerns

the real estate, similar to those which have been stated in considering it as a trust of the personal property and resting upon the same grounds, namely, that it is calculated to suspend the power of alienation for a longer time than the duration of two lives in being or of two successive life estates. A trust, which contravenes the statute in this respect, is as much void as the creation of an estate which, if allowed to stand, would have the like effect.

Upon the whole, therefore, so far as the defendant's interest in his father's estate is attempted to be locked up by the trusts of the will, I think the conclusion must be that they are void.

But if it were otherwise and the trusts of this will should be deemed valid in law and such as the court could sanction, I apprehend it will still be found that the defendant has an interest under the trusts and a benefit resulting from the property which is liable to his creditors. The 57 § in the article of the statute, concerning Uses and Trusts, declares that where a trust is created of rents and profits and no valid direction for accumulation is given, the surplus beyond the sum that may be necessary for education and support shall be liable, in equity, to the claims of the creditors of the *cestui que trust* in the same manner as other personal property which cannot be reached by an execution at law. The present was not intended to be a trust for accumulation; and the defendant's interest in the rents and profits beyond what is necessary for his support is, by this enactment, subjected to the payment of his debts—not at law however, because it cannot be taken on an execution—but, in equity, where it can be reached in the same manner as personal property of a debtor not tangible at law. It is put upon the same footing as that species of property and is liable to be operated upon in the same manner by the power of this court.

What, then, is the power and jurisdiction of this court in such cases? This is, likewise, now declared by statute. In order to form a correct understanding of the statutory provision on this subject, it is necessary to look at the reasons for its introduction. The precise grounds of this court's jurisdiction at common law and how far it could properly

exercise its power in favor of a judgment-creditor, over equitable interests, mere choses in action or other property of the debtor which, from its nature, was beyond the reach of legal process, had become a matter of some uncertainty, in consequence of the difference of opinion expressed by the judges in the final decision in *Hadden* v. *Spader*, 20 J. R. 554, and of the views entertained by Chancellor Sanford in the case, which was soon afterwards decided by him, of *Donovan* v. *Finn*, Hopk. R. 59.

Mr. Justice Marcy very clearly pointed out the distinction in the doctrine of these cases in 3 Wend. R. 621; and has shown that those decisions have left it an open question whether the court of chancery had jurisdiction to compel a debtor, against whom a judgment at law was recovered and an execution returned unsatisfied, to discover money in the funds, mere choses in action or equitable interests of every sort and apply them to the payment of the debt, without special circumstances amounting to fraud in withdrawing his property from or placing it beyond the reach of his creditor at law or from which to raise a trust in favor of his creditor or, in other words, whether the court could only assume jurisdiction in favor of the creditor through the medium of fraud or trust clearly made to appear.

In *Hadden* v. *Spader*, the opinion of Mr. Justice Woodworth, which was concurred in by Ch. J. Spencer and a large majority of the court, proceeds upon the broad ground that chancery has jurisdiction in such cases to reach every species of property of the debtor without regard to circumstances of fraud or trust. But it is certain that a doctrine to that extent was not necessary to the decision made in *Hadden* v. *Spader*: for it was clearly a case of a fraudulent withdrawal of the debtor's property and means from the reach of his creditors by the ordinary process of law, and that was enough to give the court jurisdiction.

In *Donovan* v. *Finn*, however, there were no circumstances from which to infer fraud or to raise a trust. These, Chancellor Sanford considered to be the only legitimate grounds of equitable jurisdiction to control the debtor in the disposition of his property after a judgment and execution had proved unavailing; and as *Hadden* v. *Spader* did not

call for a decision on any other ground, he deemed it not a binding authority beyond it.

The Revisors were fully aware of the extent of the doctrine advanced in *Hadden* v. *Spader* and of the limit put upon it in *Donovan* v. *Finn ;* and they proposed, therefore, to settle the question, as to the jurisdiction and power of this court, upon the basis of the former decision (see the Revisor's notes.) For this purpose, two sections of the statute were prepared and submitted to the legislature. The first declared the jurisdiction, by saying, at what time a judgment creditor may file a bill and for what purposes, namely, for discovery and an injunction ; and the second proceeded to define the powers of the court in the exercise of that jurisdiction. These sections were mainly declaratory of the common law powers and jurisdiction of the court and were doubtless so intended ; but, supposing the case of *Donovan* v. *Finn* to contain the true principles upon which that jurisdiction was founded, and I think Chancellor Sanford has successfully shown it to be so, then, so far as the doctrine advanced in *Hadden* v. *Spader* went beyond that of *Donovan* v. *Finn* and as the two sections, referred to, proposed to adopt and carry out that doctrine fully, they may be considered new in part and as conferring upon this court a more extensive jurisdiction and greater powers than it before possessed. This is so with respect to mere choses in action and money invested in stocks unaccompanied by any lien or circumstance of fraud. But, with regard to property or funds belonging to a debtor in the hands of a third person to which an equitable lien in favor of a judgment-creditor could be said to have attached or concerning which a trust could be implied, the jurisdiction of this court at common law was sufficient to reach and apply it in satisfaction of the judgment. The observations of Lord Hardwicke in *Edgell* v. *Haywood,* 3 Atk. 356, marks the above distinction: for there, upon the equity of a statute subjecting the future acquisitions of an insolvent debtor, whose person was discharged, to the payment of his debts, Lord Hardwicke held that chancery had power, upon a bill filed by a judgment-creditor, to decree satisfaction out of a legacy bequeathed to the debtor, but still remaining in the hands of the execu-

1835.

CRAIG
v.
HONE.

tor; although, as a chose in action merely and upon that ground alone the judgment-creditor could not come into this court for satisfaction out of the legacy, because the ordinary methods of compelling satisfaction, by writs of *ca. sa.* or, where the defendant could not be taken, by proceeding to outlawry and sequestration, were supposed to be sufficiently efficacious.

Thus, by looking back to the limit which the court of chancery had prescribed to itself, we are enabled to perceive how and in what respect its jurisdiction was proposed to be enlarged, by vesting it with power "to compel the discovery of any property, money or thing in action belonging to the defendant and of any property, money or thing in action due to him or held in trust for him and to decree satisfaction out of what might be discovered, whether the same were originally liable to be taken in execution at law or not." But the legislature did not adopt the proposed sections without alteration and amendment. So far as property, money or things in action held in trust for a defendant were likely to be affected, the sections were amended by introducing the words, "except where such trust has been created by or the fund so held in trust has proceeded from some person other than the defendant himself."

The question then is as to the effect of this exception?

This statute, it may be observed, is a remedial one; and it is chiefly declaratory. In some respects, however, as already shown, it is introductory of new law, conferring additional powers upon the court of chancery. But lest its broad and general terms, which expose all possible rights and interests of a party against whom a judgment is rendered to the searching operation of a creditor's bill, might have a tendency to break up trusts authorized to be created for the benefit of the prodigal, the infirm and the helpless under the so often quoted 55 §, this saving clause was introduced and for greater caution adopted. The object was to prevent express trusts proceeding solely from the bounty of a parent or of some third person, and valid in their creation under the statute, from being overthrown or diverted from their object by these creditors bills. It was enough to say that all, beyond necessary support, where the trust is not for

accumulation, should be liable to the creditors of the *cestui que trust.* Such surplus may be reached by a bill in equity, but the trust itself cannot be disturbed. I think the exception in the statute, under consideration, must be understood with reference to this state of things and was meant to have no other or greater effect. Chancellor Walworth has expressed the same idea in *Le Roy* v. *Rogers,* 3 Paige's C. R. 236; where, speaking of the exception, he says, it probably was intended to protect property the subject of an express trust created by a parent or relative in behalf of or for the support of an unfortunate child or relation and which property had been placed in the hands of a trustee for the purpose of putting it beyond the reach of the *cestui que trust* or creditors.

To give it this application is to render the several parts of the statutes, relating to trusts and to proceedings upon creditors bills, consistent with each other. It follows, then, from this view of the subject, that notwithstanding the language of the exception or saving clause of the statute, the surplus income of a trust estate, valid in its creation, and beyond what is necessary for the education and support of the *cestui que trust,* may be applied, by the decree of this court, to the payment of debts contracted by him ; and that property, money or things in action, held in trust for a debtor, if not such a trust as the law has expressly authorized, is equally liable to be so applied.

This disposes of all the questions which have been raised by the demurrer in this case.

I have thought it proper to present my views thus far, after the delay which has occurred, principally on account of the opportunity it might afford of profiting by the final decision in the case of the Lorillard Will. Still it may possibly be that I have profited but little from a perusal of the opinions in that case, in forming the conclusion I have arrived at in relation to the trusts of the present will.

My purpose, however, is not at this time to pass judgment upon the will or the law of the case any further than merely to determine whether the defendant is bound to answer the bill filed against him to reach the share or interest which he may have or be entitled to in his father's estate and liable

to be applied to the payment of debts in judgment against him. Believing he has such an interest, upon the ground in the first place that the trusts of the will are such as cannot be supported in law ; and secondly, if the trusts are valid that there may be a surplus of income belonging to the defendant which is liable in equity to the demands of creditors, the demurrer must be overruled, with costs.