## ARZBACHER, Receiver, vs. MAYER, imp.

*October 22 — November 3, 1881.*

PLEADING.   *(1, 2) What questions raised by general demurrer.   (3) Averment in complaint, that assignment was made, construed.*

CREDITOR'S REMEDIES:   *(4) Against debtor's interest in remainder in corporate stock, during existence of life estate.*

1. A demurrer for a *defect* of parties defendant does not raise the objection that no cause of action is stated against the demurrant.
. 2. A demurrer by one of several defendants that the complaint does not state a cause of action, is good if the facts stated are not sufficient *to charge the demurrant.*
3. In an action to set aside an assignment of capital stock in a corporation, alleged to have been made in fraud of a judgment creditor, the averment that such assignment was made must be construed, on general demurrer, as meaning that it was so made (under sec. 1751, R. S.) as to divest the judgment debtor of all right to the stock, unless it was void for fraud or want of consideration.
4. An estate in remainder in the stock of an incorporated company, after the expiration of a life estate therein secured to another, may be applied by equity to the satisfaction of a judgment against the remainder-man. Whether such estate can be seized and sold on execution under secs. 2989, 2990, R. S., before the life estate has expired and while the stock is in possession of trustees who hold it for the benefit of the person owning the life estate, *quære.*

APPEAL from the Circuit Court for *Washington* County. The case is thus stated by Mr. Justice TAYLOR:

"The object of this action is to enforce the application of the interest of John Schlitz in 150 shares of the capital stock of the Joseph Schlitz Brewing Company to the payment of a judgment obtained by one John Foley, Jr., against the said John Schlitz and one Francis Bergenthal, for the sum of $1,033.12. The complaint alleges the recovery of the judgment against the said Schlitz and Bergenthal in the county court of Milwaukee county, the docketing of the same in the county of Washington, the issuing of an execution upon such judgment to the sheriff of said county of Washington, and the return thereof wholly unsatisfied. It then sets out facts showing that supplementary proceedings were commenced upon said judgment before a court commissioner of Washington county against the defendant John Schlitz; that in such proceedings the plaintiff, *Adolph Arzbacher*, was duly appointed the receiver of the property of the said John Schlitz, with the usual powers of a receiver in such cases; and that such receiver was duly authorized by an order of the court to commence this action.

"The complaint then alleges that one Joseph Schlitz, late of Milwaukee county, and the uncle of the said defendant John Schlitz, died testate about the 8th day of May, 1875, leaving a large amount of property, and, among other things, 2,000 shares of the stock of the Joseph Schlitz Brewing Company, a corporation duly organized under the laws of this state, and that such shares were of the par value of $100 per share. It then alleges the due probate of the will of said deceased, and the appointment of Anna Maria Schlitz, August Uihlein, and F. Henry Magdeburg, executors of said will, and the issuance of letters testamentary to them by said court. It further alleges that there were no debts against said estate; that by said will the said testator bequeathed to said executors and their successors in office, and the survivor of them, or his

or her successors in office, the said 2,000 shares of stock, upon the following trusts: ' To have, hold, manage and control the same until disposed of as thereinafter mentioned; to pay all profits, increase, issues and revenues thereof, after defraying out of the same the expenses of the trust thereby created, to the wife of the said testator, Anna Maria Schlitz, for and during the term of her natural life and widowhood; and to transfer, set over and convey, after the death of said wife, or in case of her again becoming married, the stock so held by said executors, to the persons and in the amounts mentioned in said will.'

" The complaint further alleges that the defendant John Schlitz was one of the persons mentioned in said will, and that by the terms thereof said executors were, after the death or remarriage of the said widow, to convey to the said John Schlitz 150 of said shares, which, it is alleged, are of the value of $15,000; that the said John Schlitz is the equitable owner of said 150 shares of stock, subject to the life estate of the said widow, who is still living and unmarried.

" The complaint then alleges that before the commencement of the supplementary proceedings in this case, and after the debt had accrued upon which said judgment was recovered, and while the said John Schlitz was indebted to the said John Foley, Jr., for the purpose of cheating and defrauding his creditors, and especially said John Foley, Jr., the said John Schlitz made a pretended conveyance of the shares of stock so coming to him, and all his right and interest therein, and in said estate of said Joseph, under said will, to his wife, the defendant Katy Schlitz; and that said Katy Schlitz thereafter, for the purpose of further defrauding and cheating the creditors of said John Schlitz, and particularly the said John Foley, Jr., made a false, fraudulent and pretended mortgage or pledge of said property to the said defendant *Maria Mayer*, who is the mother of said Katy, falsely giving out and pretending that the same was given as surety for a debt due from said John

to said Maria; and that both of said transactions — the conveyance of said stock to said Katy, and the mortgage and pledge thereof — were utterly without consideration, and were a part of a plan devised by said defendants John and Katy Schlitz and *Maria Mayer*, who fraudulently conspired and confederated together to cheat and defraud the creditors of the said John, and particularly the said Foley, etc.

" It then alleges that the said John Schlitz has no other property out of which the said judgment can be satisfied except the said stock, and prays judgment that the conveyance of the said stock of John to his wife, and the mortgage by the wife to *Maria Mayer*, may be set aside and decreed to be fraudulent and void as against this plaintiff as such receiver, and that the defendants John Schlitz, Katy Schlitz and *Maria Mayer* may be ordered to convey to this plaintiff, as such receiver, all their right, title and interest in and to said shares of stock, and that the said defendants Anna Maria Schlitz, August Uihlein and F. Henry Magdeburg may be ordered to transfer, set over and convey the said shares to this plaintiff, his successors or assigns, on the death or marriage of said widow of said Joseph, and that the defendants be, in the meantime, enjoined and restrained from selling, etc., or in any manner interfering with, said shares of stock, or any part thereof, and for such other relief as shall be just. The complaint was duly verified.

" The defendant *Maria Mayer* demurred separately to the complaint, alleging as grounds of demurrer, *first*, that the plaintiff has no legal capacity to sue; *second*, that there is a defect of parties, in that it appears upon the face of the complaint that John Foley, Jr., is the real party in interest, and should be named as the plaintiff therein; *third*, that there is a defect of parties defendant in that this defendant should not be made a party therein; and *fourth*, that the complaint does not state facts sufficient to constitute a cause of action."

The demurrer was overruled, and the demurrant appealed from the order.

The cause was submitted for the appellant on the brief of *O'Meara & Miller.*

For the respondent there was a brief by *S. S. Barney* and *F. M. Hoyt,* and oral argument by *Mr. Hoyt.*

TAYLOR, J.   Upon the argument in this court, the appellant did not urge the consideration of the first and second causes of demurrer assigned by her, but relied solely on the third and fourth grounds.   The third ground of demurrer, that there is a defect of parties defendant because the defendant should not have been made a party, is clearly untenable.   The fact that a party is made a defendant against whom no cause of action is stated, is not a ground of demurrer under the provision of the statute which allows a demurrer because of a defect of parties plaintiff or defendant.   In order to sustain a demurrer by the defendant for a defect of parties defendant, it must appear that a party who is a necessary party defendant has not been made such.   If a party has been made a defendant when no cause of action is stated against him, he must demur for that reason, and not on account of a defect of parties.   *Willard v. Reas,* 26 Wis., 540; *Marsh v. Supervisors,* 38 Wis., 250; *Great Western Compound Co. v. Ætna Ins. Co.,* 40 Wis., 373; 1 Wait's Pr., 139, and cases there cited.   All the objections made by the appellant as to the sufficiency of the complaint, under his third ground of demurrer, can be raised under his fourth, " that the complaint does not state facts constituting a cause of action."   This ground of demurrer is sustained if the complaint does not state facts sufficient to charge the party demurring, although the facts may be sufficient to charge other parties not joining in such demurrer.

The only other question to be considered in this case is, whether the complaint states facts sufficient to constitute a

cause of action. On the part of the learned counsel for the appellant it is alleged that it does not, for two reasons: *First*, because the allegations are not sufficient to show that there has been any such transfer of the interest of the defendant John Schlitz in the stock mentioned as would in any way interfere with the right or power of the judgment debtor to levy upon the same and sell it in satisfaction of his judgment, and therefore there is no reason for this proceeding supplementary and in equity. He bases this objection upon the decision of this court in the case of *The Application of Thomas Murphy*, *etc.*, 51 Wis., 519, in which it is held that the transfer or assignment of shares of stock of an incorporated company, until such transfer or assignment is entered upon the books of the company as provided in section 1751, R. S., is void as to all persons except the parties to such transfer. It is insisted that because the complaint fails to allege in express terms that the transfer made by John Schlitz to his wife of the stock in question was entered upon the books of the company as provided in such section, it fails to allege such a transfer as does in any way interfere with the right of the judgment debtor to seize and sell the interest of John Schlitz in the same upon the execution issued upon the judgment, and so shows no ground for maintaining this equitable action.

If it be admitted (a point we do not decide) that the provisions of sections 2989 and 2990, R. S., which prescribe the manner of seizing and selling the interest of a judgment debtor in the capital stock of an incorporated company upon an execution issued upon a judgment against him, authorize the seizure and sale of an interest in such stock when such stock is subject to the life estate of another, and is in the hands of trustees and held by them for the benefit of the person having the life estate during the continuance thereof, still we are of the opinion that the demurrer is not well taken. The general words of the complaint, alleging a conveyance of the stock by John Schlitz to his wife, and her conveyance thereof to her

mother by way of mortgage, is a sufficient allegation of such a conveyance as would divest the judgment debtor of all right to said stock, as against the wife and mother, if the same were made upon a sufficient consideration and without any intent to defraud the creditors of the said John Schlitz. The claim of the plaintiff made by his complaint is, that the conveyances set out in the complaint would divest the judgment debtor of his right to apply the same to the satisfaction of his debt, were it not for the other allegation that the conveyances were made with a fraudulent intent and without consideration. If the defendant had answered and admitted the conveyance and mortgage, as alleged in the complaint, and denied the fraud and want of consideration, we think the burden of proof would have been upon the plaintiff to show the fraud or want of consideration; and he would not have been permitted to rest his case upon proof that the transfer had not been made upon the books of the company. That fact would not be in issue, but under the pleadings would have been an admitted fact. *Whiting v. Gould,* 2 Wis., 552, 594.

This court has held that in pleading a contract which is void unless in writing, the party relying upon the validity of the contract need not, in setting it out in his complaint, show that it was in writing; that a general allegation that an agreement was made, setting out its terms, is sufficient, and is good against the demurrer that the complaint does not state a cause of action. *Pettit v. Hamlyn,* 43 Wis., 314; *Whiting v. Gould, supra,* 594. So, in the case at bar, the plaintiff relying upon the fact that the judgment debtor has conveyed his interest in the stock so as to divest the judgment debtor of his right to have the same applied to the payment of his judgment unless such conveyance is void for fraud or want of consideration, the general allegation that the same was conveyed and assigned will be presumed to be of such legal transfer or assignment as would divest the judgment debtor of his right except for the fraud and want of consideration.

The second point made by the learned counsel for the appellant is, that under the provisions of section 3029, R. S., the interest of John Schlitz in the stock in question cannot in any event be subjected to the payment of the judgment rendered against him, and consequently it is wholly immaterial, so far as the plaintiff acting as receiver is concerned, whether he has conveyed such interest either fraudulently or otherwise. If it be true that the interest of the judgment debtor in the stock in question cannot, by proceedings either at law or in equity, be applied to the payment of the judgment against him without his consent, then it is clear this action cannot be sustained. This section reads as follows: "Whenever any execution against the property of any judgment debtor shall have been issued upon a judgment for the payment of money, and shall have been returned unsatisfied in whole or in part, the judgment creditor may commence an action against such judgment debtor and any other person, to compel the discovery of any property or thing in action belonging to such judgment debtor, and of any property, money or thing in action due or held in trust for him, and to prevent the transfer of any such property, money or other thing in action, or the payment or delivery thereof, to such judgment debtor, *except where such trust has been created by, or the fund so held in trust has proceeded from, some person other than the defendant himself.*"

Under the provisions of the statutes of this state it is entirely unnecessary to discuss the question whether, at common law, the shares of capital stock of an incorporated company could be subjected to the payment of a judgment against their owner. Our statutes have expressly provided that such shares may be applied in that way, and may, in cases at least where there is no dispute about the ownership or right to immediate possession, be seized and sold on execution, without any resort to a court of equity for that purpose. See sections 2989 and 2990, R. S. The only doubt about the right to apply the in-

terest of the defendant John Schlitz to the payment of the judgment against him in this case arises out of two circumstances: *first*, that his title to the stock is an estate in remainder, after the expiration of a life estate which is still outstanding; and *second*, that the stock is now held by trustees for the benefit of the owner of the life estate, with directions to convey to the defendant John Schlitz when such life estate shall terminate.

The first objection, that the defendant's estate is a remainder subject to a life estate, would seem to be no objection, either in law or equity, to subjecting it to the payment of his debts. If the estate were real estate, there could be no doubt about the authority to sell such estate upon the execution. The statute (section 2059, R. S.) makes such an estate in real property "descendible, devisable and alienable, in the same manner as estates in possession;" and it is a general rule that every estate in lands which is alienable by the party entitled to the estate, is liable to be seized and sold on execution against him. See Herman on Executions, 184; *Williams v. Amory*, 14 Mass., 20; *Penniman v. Hollis*, 13 Mass., 429; Freeman on Executions, § 178; *Burton v. Smith*, 13 Pet., 464; Watson on Sheriffs, 208; *Moore v. Littel*, 41 N. Y., 66; *Woodgate v. Fleet*, 44 N. Y., 1; *Sheridan v. House*, 4 Keyes, 569; and other cases cited by Freeman in notes 6, 7, 8, to section 178. This court held *(Bridge v. Ward*, 35 Wis., 687) that when a life estate in real property was devised to a man, after the death of the testator his life estate could be sold on execution, although there was a provision in the will restricting the devisee from selling the same. The restriction in the will was not accompanied by any declaration that an alienation by the devisee should work a forfeiture of his estate. These authorities also hold that it is immaterial that the remainder is an undivided or even an uncertain interest. See cases of *Moore v. Littel* and *Woodgate v. Fleet, supra;* *Atkins v. Bean*, 14 Mass., 404; *Puryear v. Edmondson*, 4 Heisk., 43.

Arzbacher, Receiver, vs. Mayer, imp.

The rule in regard to real estate has been applied by the courts to estates in remainder in personal property, and sales of estates in remainder of personal property upon execution have been upheld. Some courts have held that such estates in chattels, where the person having the life interest, or some other person in trust for the life estate, had the actual possession, could not be sold on execution, because there was no way of delivering possession upon such sale to the purchaser; but the same courts have held that a court of equity could subject such interest in remainder to the payment of a judgment against the owner of such estate. Freeman on Executions, § 122; *Allen v. Scurry*, 1 Yerger, 36; *Sale v. Saunders*, 24 Miss., 38; *Good v. Longmire*, 35 Ala., 668; *Knight v. Leake*, 2 Dev. & B. (N. C.), 133; *Lockwood v. Nye*, 2 Swan, 515; Herman on Executions, 145. There seems to be no reason for holding that an estate in remainder in chattels, which, like an estate in remainder in real estate, is clearly assignable at the will of the owner of such estate, should not be sold on execution to satisfy his debts, the same as any other property owned by the debtor. The only objection raised against a sale of such estate on execution is based upon the objection that, when the party having the precedent estate has the possession, there is no way of delivering possession, and that in consequence of such difficulty the judgment debtor must proceed in equity, or according to some statutory remedy, in order to subject such estate to the payment of his claim; all the courts holding that in some way the judgment creditor is entitled to have the estate sold and applied to the satisfaction of his debt.

In a case like the one at bar, where the statute has expressly pointed out a method of seizing and selling the interest of a judgment debtor in the capital stock of a corporation, there would seem to be no very apparent reason why an estate in remainder, as well as a present estate, might not be seized and sold in the manner pointed out by the statute; but it is un-

necessary to decide that point in this case, as the plaintiff makes out a case for the intervention of a court of equity to set aside the alleged fraudulent conveyances, and to restrain other conveyances, even though, in the absence of such fraudulent acts on the part of the owner of the estate in remainder, he might have proceeded to sell in the way pointed out in the statute. There does not appear to be any valid objection to the sale of the estate or interest of the judgment debtor in these shares of stock, unless it be the objection that this stock is held in trust for the benefit of John Schlitz, and that it is a trust fund created by, or a fund held in trust which has proceeded from, some person other than the defendant, and so comes within the exception found in said section 3029. The learned counsel for the respondent answers that this is not an action under said section, and therefore its provisions do not control the rights of the plaintiff therein. We are of the opinion that the section is general in its provisions, and that property held in trust as mentioned in said section cannot be applied to the satisfaction of a judgment against the *cestui-que-trust* either in any proceeding, commenced under said section or in any other proceeding authorized by law for the subjection of the property of a defendant to the payment of a judgment against him.

The only question, therefore, for this court to determine is, whether the estate of the defendant in remainder in this stock was so held in trust, at the time this action was commenced, as to come within the exception of the statute. This section was adopted by the legislature of this state from the statutes of New York, in 1860. See chapter 303, Laws of 1860, and 2 R. S. of New York, 1830, p. 174, title 2, part 3, ch. 1, § 38; 2 Edm. R. S. (N. Y.), 180. The construction of the exception in the statute above referred to has been frequently passed upon by the courts of New York, and many of the decisions below referred to were made before the section was adopted by the legislature of this state. The conclusion

arrived at by such courts is, *first*, that the exception has no application to property which is held by a trustee for the benefit of a judgment debtor when, notwithstanding such trust, the judgment debtor has the absolute power of transferring, conveying or assigning his interest in the property so held in trust; *second*, that where the property is held in trust, the rents or income thereof only to be paid over to the judgment debtor for his support and maintenance, such debtor having no power to alienate the fund held in trust, or the rents or income thereof so far as the same are necessary for his support and maintenance, neither such fund nor the income thereof, so far as such income is necessary for his support, can be subjected to the payment of his debts; but if the income be greater than is reasonably necessary for his support, a court of equity can compel the surplus of such income, over and above what is reasonably necessary for the support of the debtor, to be applied to the payment of his just debts. The first proposition is upheld upon the ground that it is against public policy that property should be held by a title which gives the owner the absolute right of disposition, and yet the same be held exempt from the payment of his debts, and that it cannot, therefore, be presumed that the legislature intended the exception in the statute to apply to a case of that kind. *Hallett v. Thompson*, 5 Paige, 583. This proposition has been sustained by the courts of that state in all the subsequent decisions. *Williams v. Thorn*, 70 N. Y., 270.

The second proposition was established in the early decisions of the court of chancery *(Craig v. Hone*, 2 Edw. Ch., 569, and *Hallett v. Thompson, supra);* and, although there have been some dissenting opinions on the part of some of the judges, the proposition has been quite uniformly sustained. See *Williams v. Thorn, supra.* To sustain this latter proposition the courts of New York rely mainly upon the fact that the statutes of that state expressly provide that a trust to receive the rents and profits of land and apply them to the use

of any person during the life of such person or for any shorter
period, is, as it is in this state, a valid trust (see section 2081,
R. S. 1878), and that in such case the statute declares "that
no person beneficially interested in a trust for the receipt of
the rents and profits of lands can assign or in any manner dis-
pose of such interest; but the rights and interest of every
person for whose benefit a trust for the payment of the same
in gross is created, are assignable." 1 R. S. N. Y., tit. 2, part
2, ch. 1, art. 2, § 63 (section 2089, R. S. 1878, Wis.). The
section in this state is the same as in New York. The income
of the trust estate, being inalienable by the party entitled
thereto, cannot be applied to the payment of the debts of the
beneficiary, it being a general rule that only such rights as
are assignable by the owner can be subjected to the payment
of debts. The courts hold that like trusts in the income of
personal property are protected against the claims of the
judgment creditor by the exception in the statute above re-
ferred to.

The courts of New York have also arrived at the conclusion
that the surplus of the income of such trust estate, over and
above what is necessary for the support of the debtor, may be
subjected to the payment of his debts, notwithstanding the
exception in section 38, tit. 2, pt. 3, ch. 1, art. 3, 1 R. S. N.
Y., 1830, for the reason that section 57, tit. 2, pt. 2, ch. 1, art.
2, 1 R. S. N. Y., provides that where a trust is created to re-
ceive the rents and profits of lands, and no valid direction for
accumulation is given, the surplus of such rents and profits
beyond the sum that may be necessary for the education and
support of the person for whose benefit the trust is created,
shall be liable in equity to the claims of the creditors of such
person in the same manner as other personal property which
cannot be reached by an execution at law. Section 2083, R.
S. 1878, of our law, is the same as the section quoted from
the statutes of New York. The courts of New York con-
clude that the exception in section 38, referred to, was not in-

tended to repeal the provisions of the last-named section, and therefore, in all cases of trust to pay over the rents and profits of real estate for the support of the debtor, the surplus of such rents beyond a necessary support would still be subject to the payment of his debts, under section 57.

The language of the exception in section 38 is broad enough to cover all trusts of the kind mentioned in section 57; but as it is clear that the exception was not intended to cover the cases provided for in section 57, they also hold that it will not be presumed that the exception was intended to protect a trust in personal property to apply the income thereof to the support and maintenance of the debtor any further than it is necessary for his support and maintenance, and when the income derived from the trust property is greater than needed for such support, the surplus will also be applied to the payment of his debts, the same as though such income were deducted from the rents and profits of real estate held in trust for his support. Some of the judges hold that it is against public policy to permit any person to enjoy an income much larger than is necessary for his reasonable support, exempt from the claims of his creditors, and that therefore they will not presume the exception was intended to cover such a case. This latter view of the case is in accord with the provisions of our constitution upon the subject of exemptions, which provide that "the privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted." Sec. 17, art. I, Const. Wis.

The cases in which these questions have been discussed and passed upon by the New York courts are the following: *Craig v. Hone*, 2 Edw. Ch., 569; *Hallett v. Thompson*, 5 Paige, 583; *Clute v. Bool*, 8 Paige, 83; *Rider v. Mason*, 4 Sandf. Ch., 351; *Sillick v. Mason*, 2 Barb. Ch., 79; *Scott v. Nevins*, 6 Duer, 672; *Graff v. Bonnett*, 31 N. Y., 9; *Locke v. Mabbett*,

2 Keyes, 457; *Wetmore v. Truslow*, 51 N. Y., 338; *Campbell v. Foster*, 35 N. Y., 361; *Bramhall v. Ferris*, 14 N. Y., 41; and *Williams v. Thorn*, 70 N. Y., 270. The statute in question having been taken from the statute of New York, in the exact language of the statute of that state, its construction by the courts of that state, previous to its adoption here, must be held by this court as of great weight, and should be followed, unless clearly inconsistent with its real meaning or contrary to the policy of the laws of this state. We see nothing in the construction of the statute by the courts of New York which is not well sustained by the reasons given therefor by such courts, or which is in any way against the policy of the laws of this state; and we are disposed, therefore, to accept such interpretation as the true one.

The trust created in regard to the shares of stock in the case at bar is not a trust to pay over the income of the stock, or any part of it, to the defendant John Schlitz. The existence of the trust estate is for the benefit of the widow of the deceased, and is to terminate with her death. Its existence does not in any way interfere with the sale, transfer or assignment of the interest of John Schlitz in such stock. So far as he is concerned, his title is as absolute and untrammelled as though there had been an absolute bequest of the stock to him, to be delivered over at the decease of the testator. His interest in the stock is therefore subject to be applied to the payment of his debts as much as any other property owned by him.

If the trustees hold this stock in trust for the defendant John Schlitz, so far as his estate therein is concerned, they hold it as a naked trust. It is a trust merely to convey to him the legal title when he shall become entitled to the possession of the property under the devise. Until that time arrives, they hold the property in trust for the widow, and not the defendant. In such case, if it were a trust in real estate, the interest of the *cestui que trust* could be seized and sold on the

execution, notwithstanding the trust. Section 2992, R. S., provides that "lands, tenements and real estate holden by any one in trust, or for the use of another, shall be liable to debts, judgments, executions and attachments against the person to whose use they are holden." We see no reason why the same rule should not apply to the case of a trust in personal property where the trustee holds a mere naked title for the use of another, such other person having the right to all the beneficial use thereof without any restriction or limitation.

We have some doubt whether the plaintiff has demanded the proper relief in his complaint; but that is no ground of objection to the complaint upon this demurrer.

*By the Court.*— The order of the circuit court is affirmed, and the cause remanded for further proceedings according to law.