# Ford, etc. v. Southern National Life Insurance Company. Ford's Administrator, etc. v. Same.

(Decided October 22, 1914.)

## Appeal from Franklin Circuit Court.

1. Law of the Case—Opinion on Former Appeal (See 151 Ky., 476.)—Where, upon a former appeal, the case was reversed with directions to the lower court to vacate the judgment appealed from and to declare the mortgages upon the trust property void, and directing that the amount due appellee be ascertained and allowed as a general claim, the opinion is the law of the case, and the lower court properly re-opened the case and tried the insurance company's claim upon its merits.

2. Stock—Unlisted Stock—Sale of—Value.—The stock sold the decedent by the insurance company was not listed and there is no evidence that it had any market value. The decedent sold some of it for $12.50 a share. There is no evidence that it was worth at the time any more, and the lower court did not err in taking that valuation as the "correct amount due" on the claim.

3. Insurance—Surrender Value of Policies.—The complaint that a larger surrender value should be allowed the insurance company is not justified. The policies should not have been issued, and the allowance to it is sufficient in view of the questionable risk it was relieved of.

4. Judgment.—While the decedent did not have power to bind the trust estate, he did have power to bind himself by contract, and judgment was properly rendered to the extent that he received cash from the insurance company.

ROBT. C. TALBOTT and ROBT. B. FRANKLIN for appellants.

JOHN W. RAY, BENNETT H. YOUNG and MARION W. RIPY for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This is a second appeal and it will, therefore, not be necessary to restate all the facts which are so fully set forth in the former opinion. Southern National Life Insurance Co. v. Ford's Admr., 151 Ky., 476. It is sufficient to say that the Life Insurance Company sought to secure a judgment and enforce a mortgage lien for $10,215 against the estate of Elliott Ford, deceased. This effort was resisted by the administrator and guardian of Ford's infant child, because Ford was a profligate spendthrift, and, therefore, incompetent to transact business, and was so known to be by the Insurance Company, its offi-

cers and agents, at the time they permitted Ford, just after arriving at maturity, to incur the indebtedness with the company. The lower court had given judgment for the full amount of the debt, but held that the company had no recourse on the trust estate by reason of the mortgage, and that the debt should not be paid out of any part of the trust estate devised by T. B. Ford, his father. The only property Elliott Ford had was this trust estate, which he had endeavored to encumber by mortgage, so that a judgment for the debt alone was an empty thing, and gave to the company no substance of relief. The Insurance Company appealed. In disposing of the case, the court used this language:

"So we conclude that the mortgages executed by Elliott Ford on the trust property are unauthorized and void; but Elliott Ford was at the time of these transactions of lawful age, and while he did not have the power to encumber this trust property, he did have the power to bind himself by contract, and he was bound by his contracts with appellant, in so far as they were fairly made, and he was not overreached, defrauded or imposed upon by reason of his youth, disposition and inexperience and the conditions surrounding him; and we see no good reason why whatever sum he justly owes the appellant should not be paid out of this trust estate as well as out of any other property which he may have owned. * * *

"It is perfectly apparent from this record that there has been no equitable adjustment of the claims pending between appellant and Ford's administrator, and that Elliott Ford, in the summer and fall of 1910, was in no physical or mental condition to have taken steps necessary to bring about a fair settlement.

"The court upon the return of this case will enter a judgment vacating the judgment of October 1, 1910, and declaring the mortgages executed by Elliott Ford upon the trust property to be void, and after ascertaining the correct amount due appellant by Elliott Ford's estate, allow the same, with interest, as a general claim against it. In all other respects the judgment is affirmed."

On a return of the case there was a retrial on the validity and justness of the claim sued for. The court heard the proof on the first appeal, and that taken subsequently, on the questions suggested in the opinion, *supra.* That is, whether the contracts were fairly made

or whether the boy had been overreached or defrauded or imposed upon by reason of his youth and inexperience, disposition, anl surrounding conditions. As a result, the court entered a judgment in favor of the Insurance Company for $7,123.44. The judgment was itemized and was only for cash and cash value advanced to the young man. In other words, it permitted the Insurance Company to recover the actual cash it had advanced or loaned to the young man, and for 150 shares of stock in the company at the value of $12.50 per share. The value of these shares in the former judgment was fixed at $20, their par value. The amount of premiums charged for two years, in advance, on $15,000 of life insurance amounting to $1,482.90 was eliminated by the last judgment, and a recovery permitted for only the surrender value, that is $732.94, paid in cash to Ford by the company on surrender of the policies. Making allowances for interest charges, the last judgment is the same as the former one, with these exceptions, that is, as to the amount; as to the status of the claim, the last judgment conforms to the opinion. From this judgment both parties appeal.

For the Insurance Company, it is insisted that the lower court erred in reopening the case on its merits, for it says that it was the only appellant on the former appeal, and the sole question there was, whether the mortgage on the trust estate was enforcible, and that was really the only question decided. On the idea that the administrator and guardian took no cross-appeal, it is argued they are precluded by the first judgment fixing the indebtedness at $10,215. But by a reference to the opinion above quoted, it will be seen that the money judgment as well as the mortgage was set aside. It was specifically declared that the record disclosed the fact that there had been no equitable adjustment of the claims between the Insurance Company and the estate, and the court was directed on a retrial to ascertain, "the correct amount due" the Insurance Company, and allow same with interest as a general claim against the estate. The measure for this ascertainment was established, and direction was given to find for appellant so much of the indebtedness as had not been incurred by overreaching, defrauding or imposing upon Ford by reason of his youth, disposition and inexperience. On the appeal the whole judgment—not a part of it—was before us, and the opinion, *supra,* went to the whole of it.

The opinion is the law of the case, and it makes no difference that the Ford estate was merely appellee. For these reasons we conclude that the lower court did not err in reopening the case and trying the insurance company's claim upon its merits.

The company then says that the court erred in eliminating the items above referred to. The chief difficulty we have had is not in upholding the lower court in this ruling, but in sustaining the judgment for any sum. As indicated in the former opinion, the young man, under his father's will, was not entitled to possession of the property. It was to be held for him in trust until he reached the age of 25. All these transactions occurred while he was under that age, and in the face of an order of the circuit court limiting the trustee to an annual expendiure of $500 for his support. The insurance company had actual knowledge of this court order, and the proof tends to show that before it parted with any of its money, it knew of his wasteful habits, and his willingness to sell his birthright for a mess of pottage. In all these transactions, he was shown to be careless and indifferent of the extent and character of the obligations he assumed if only he might thereby secure a relatively small amount of cash.

To the claim that the court erred in fixing its recovery for stock sold at $12.50 instead of the contract price, the company says that it should not be bound in value by the price which the young man realized for it. In other words, if the contract price is not to control, then the market price should. Proof for the company shows that the stock was not listed, and there is no evidence that it had any market value. Ford sold part of this stock for $12.50 and the balance for $6.00 per share. There is no evidence that it is worth more than $12.50, if that much, and, in our opinion, the court did not err to the prejudice of the company in taking the $12.50 value as "the correct amount due" on this account.

The company complains that in the allowance of only one year's surrender value on the life policy, the court in effect denies it a premium for carrying the policy for one year on Ford's life. Soon after the policy was issued, Ford's physical condition became such as to alarm the company, and the proof indicates that the company took the initiative in securing a surrender of the policies. From the facts in evidence, we are convinced that Ford was not what is called a good risk at the time he made

the application, and from answers made to certain questions, he could not under ordinary circumstances have been permitted to recover on the policies if death had occurred before surrender. In truth, the policies were applied for and the stock purchased, not for any benefits he might receive under them, but in order to get the further sum of cash, which he was thereby enabled to receive in the way of a loan.

In view of these circumstances, the policies should not have been issued, and when the company voluntarily returned in cash the unearned premium for the last of the two years contracted for, it should be satisfied to recover that cash, when it was relieved of an obligation on a very questionable risk.

Ford's estate also appeals and claims that the court erred in permitting a recovery in any amount. It will serve no good purpose to go further into details as to the evidence in the case. Ford was of age, and as stated in the former opinion, "while he did not have the power to encumber his trust property, he did have the power to bind himself by contract," and to the extent that by such contracts, he received money by way of loan or advancement, we can not see that he was overreached or imposed upon, although he proceeded without any delay to run through with it in riotous living. It was for the cash received from the company that the court rendered judgment, and this judgment, we believe, is supported by the law and facts of the case.

It is, therefore, affirmed on both appeals.