## Southern National Life Insurance Co. v. Ford's Admr

(Decided January 10, 1913.)

### Appeal from Franklin Circuit Court.

1. Wills—Devise to One in Trust—Execution of Mortgage on Trust Property—Enforcement of Contract Fairly Made.—While it is manifest from the wording of the will that it was the purpose of the testator to give his only son the fee simple title to all the property devised, it is equally manifest that it was his purpose that the son should have no control or dominion over it until he reached the age of twenty-five years, and in view of these provisions, the mortgages executed by the son on the trust property, he not having reached the age of twenty-five, were unauthorized and void, but as he was at the time of the transactions of legal age, while he did not have power to encumber the trust property, he did have power to bind himself by contract, and in so far as the contracts with appellant were fairly made, and he was not overreached, defrauded or imposed upon by reason of his youth, disposition and inexperience, the sum he justly owes appellant may be paid out of the trust estate as well as any other property which he may have owned.

2. Judgment—Motion to Set Aside Judgment—Mortgage Liens—Allowance as General Claim.—It appearing that at the time the judg-

ment enforcing the lien upon the property held in trust for Ford was rendered that he was ill at the home of his father-in-law in Bourbon county, and had for several weeks theretofore been out of his mind and unable to attend to any business whatever, on motion of his administrator, to vacate the judgment, there should have been a judgment vacating the one enforcing the mortgage liens and declaring the mortgages upon the trust property void, and directing that after ascertaining the correct amount due appellant by Ford's estate it should be allowed with interest as a general claim against the estate.

3.   Judgment—Action to Vacate—Pleading.—The pleadings presented by Ford's administrator and the guardian of the infant must be regarded as an action to vacate the judgment, and the fact that there was no independent action for that purpose will not be permitted to prejudice their rights.

JOHN W. RAY, for appellant.

D. W. & JOHN B. LINDSEY, for Fidelity Trust Company.

ROBT. B. FRANKLIN, ROBT. C. TALBOTT, for Ford's Administrator.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

Thomas B. Ford died a widower, and resident of Franklin county, in March, 1903. He left as his only child Elliott Ford, a boy then nearly seventeen years of age. In September, 1902, he made and published his last will and testament, which is as follows, to-wit:

"WILL

"In the Name of God, Amen:

"I, Thomas B. Ford, hereby make and declare this my last will and testament.

"I give to my son, Elliott Ford, all of my property, real and personal, to be held in trust by the Fidelity Safety Vault and Trust Company, of Louisville, Ky., until he is twenty-five years of age, and then he is to have possession and control of same. Said trustee is to superintend his property and see that the interest of my son is protected and that he is properly provided for according to his means.

He is to aid his Grandmother and Aunt Rose, and see that they have a home while they live; permitting them to occupy the house and lot on Washington street without rent, with such other members of her family that Mrs. Elliott may desire.

"Witness my hand this 23rd of September, 1902.

Witnesses:                                    Thos. B. Ford.

   G. W. Chinn,
   W. H. Watkins.

"CODICIL.

"I give to Miss Rose Elliott my household and kitchen furniture, except the piano.

"In my hand-writing December 1, 1902.

T. B. Ford."

The will was, shortly after his death, duly probated and the Trust Company qualified as administrator with the will annexed and as testamentary trustee of Elliott Ford and as guardian for Elliott Ford. In July following, the Trust Company in all three capacities filed its action against Elliott Ford and numerous creditors of Thomas B. Ford, seeking a settlement of the decedent's estate, and asking the advice of the chancellor about matters connected with the administration of the trust. The chancellor below instructed the trustee by an order to allow the infant Elliott Ford not exceeding Five Hundred ($500) Dollars per year for his support and education; but it appears that the young man was a wayward, profligate and extravagant person and was dissatisfied with this allowance and undertook to raise money after he became of age by encumbering the real estate which he had taken under his father's will.

The appellant insurance company, with full knowledge and notice of the fact that the trust estate was being administered by the chancellor, and of the provisions of the decedent's will, and without asking the consent of either the chancellor or the trustee, and without their knowledge, on January 30, 1909, loaned Elliott Ford about Fifteen Hundred ($1500) Dollars in money, upon the condition that he would take out Five Thousand ($5000) Life Insurance with it, and pay the premiums thereon for two years in advance, and the interest on the loan for two years in advance, and the further condition that he would buy Fifty (50) shares of its stock at Twenty ($20) Dollars per share, and took a mortgage from him for Three Thousand Five Hundred ($3500) Dollars upon the trust property.

Within five months thereafter and on May 6, 1909, the insurance company again advanced Elliott Ford about Three Thousand ($3000) Dollars in money, and sold him one hundred shares of its stock at Twenty ($20) Dollars per share, upon the condition that he would take out another Ten Thousand ($10,000) Dollars policy, and pay the premiums thereon for two years in advance, and the interest on the money for two years in advance, and

took his note for Six Thousand Seven Hundred and Fifteen Dollars and Seventeen Cents ($6,715.17), secured by mortgage on the trust property. Both of these transactions were had after Elliott Ford became twenty-one years of age, but before he became twenty-five years of age; and it appears that all this time the stock of the company was not worth exceeding Twelve Dollars and Fifty Cents ($12.50) per share.

In March following the first transaction, Ford sold the first fifty shares of stock paid for by him at Twenty ($20) Dollars per share, to one of the attorneys for the company at Twelve ($12) Dollars per share, and within thirty days after the second transaction, the local agent of the insurance company bought back the one hundred shares of stock which Ford had bought at Twenty ($20) Dollars per share for Six ($6) Dollars per share. It appears from the evidence of the local agent of the insurance company that, in the summer of that year, he knew Elliott Ford to be in very delicate health and did not believe that he would live a year, and that through his efforts an agreement was reached between Ford and the company, by which the two life insurance policies were cancelled in consideration of repayment by the company to Ford of some part of the premiums paid by him. This was done at a time when the agent knew that Ford was very hard-up for money and when it would be easy to take advantage of his situation.

On the 24th of November, 1909, The Fidelity Trust Company, as administrator and trustee, filed a supplemental petition in equity wherein it made the appellant Southern National Life Insurance Company a defendant and set up the fact that it claimed a lien upon the trust estate, and called upon it to assert it, and thereafter and on April 27, 1910, the appellant filed its answer and cross-petition setting up the facts with reference to the mortgages. On the 1st of October, 1910, the court, in entering a judgment upon various claims and matters involved in the litigation, adjudged, among other things, that Elliott Ford was indebted to the appellant insurance company in the sum of Ten Thousand Two Hundred and Fifteen Dollars and Seventeen Cents ($10,215.17) with interest from May 30, 1911, and that the company had a lien upon the trust property to secure the payment of same, subject to the prior lien of The Fidelity Trust Company. At the time this judgment was entered Elliott Ford was ill at the home of his father-in-law in Bourbon

county, and had, for several weeks theretofore, been out of his mind and unable to attend to any business whatever. It appears that some time in August of that year he was stricken with typhoid fever and, having had previously a constitutional disease, the two together had affected his mind to such an extent as to make him utterly incapable of transacting any business. In November of that year he was adjudged, by an inquest in the Bourbon county court, to be of unsound mind, and N. H. Taylor, his father-in-law, was appointed his committee.

On the 3rd of January, 1911, Taylor, as committee, filed his answer setting up the facts as to the execution of the two mortgages and the transaction connected therewith. Shortly thereafter Elliott Ford died and Taylor qualified as his administrator and as statutory guardian of the infant child of Elliott Ford. He filed his answer February 21, 1911, attacking the said mortgages and the judgment of October 1, 1910. The issues were made up between the parties as to the validity of the mortgages and judgment and the evidence was taken. In addition to the pleadings on this subject, Taylor, as administrator and guardian, gave a written notice to the appellant insurance company that he would on a certain day enter a motion to set aside and hold for naught the judgment rendered October 1, 1910, aforesaid, and upon the hearing of that motion, and upon consideration of the whole case, the court, on January 13, 1912, adjudged that the Southern National Life Insurance Company had no claim by reason of the mortgages against any of the trust property devised by the will of T. B. Ford, and allowed the claims against the estate of Elliott Ford as unsecured claims, but provided that they should not be paid out of any part of the trust estate devised by T. B. Ford.

It is perfectly manifest from the wording of the will, that it was the purpose of the testator to give to his only son the fee simple title to all the property devised; but it is equally manifest that it was his purpose that he should have no control or dominion over it until he reached the age of twenty-five years, and that the designated trustee should "superintend his property and see that the interest of my son is protected and that he is properly provided for according to his means." He specifically provided that his son was not to have possession or control of the property until he reached the age of twenty-five years, and to hold that he might encumber

or convey it before he reached that age would be effectually to thwart the plain purpose of the testator.   The will meant to give the property absolutely to Elliott Ford, but to restrict not only his possession and control of it, but his right of alienation until he became twenty-five years of age; and the right to restrict alienation even for much longer periods than that have frequently been upheld by this court.   So we conclude that the mortgages executed by Elliott Ford on the trust property are unauthorized and void; but Elliott Ford was at the time of these transactions of lawful age, and while he did not have the power to encumber this trust property, he did have the power to bind himself by contract, and he was bound by his contracts with appellant, in so far as they were fairly made, and he was not overreached, defrauded or imposed upon by reason of his youth, disposition and inexperience and the conditions surrounding him; and we see no good reason why whatever sum he justly owes the appellant should not be paid out of this trust estate as well as out of any other property which he may have owned.

It is insisted for the appellant that the pleadings filed by Elliott Ford's administrator do not authorize the vacating of the judgment of October 1, 1910, and that the written motion entered does not authorize it.   The motion seems to have been made long after the pleadings between Elliott Ford's administrator and appellant insurance company were made up and after all the evidence had been taken.   It is not necessary that an action to vacate a judgment under the provisions of sections 518 and 520 of the code ''shall be a new and independent action,'' although that is regarded as the better and safer practice; Henry Vogt Machine Company v. Pennsylvania Iron Works Company. 23 R. 2163.   Joseph v. The Hotopp, 7 R. 285.   Murray v. Murray, 16 R. 332.

The pleadings presented by Elliott Ford's administrator and the guardian of the infant in this case must be regarded as an action to vacate that judgment, and the fact that there was no independent action for that purpose will not be permitted to prejudice their rights. It is provided by section 518 of the Civil Code that ''The court in which a judgment has been rendered shall have power after the expiration of the term, to vacate or modify it.''

Subsection 5:   ''For erroneous proceedings against a person under disability, except coverture, if condition of

such defendant do not appear in the record, nor the error in the proceedings."

Subsection 7: "For unavoidable casualty or misfortune, preventing the party from appearing or defending."

It appears from the indisputed evidence that from early in the month of August, 1910, until his death, Elliott Ford was of unsound mind and physically unable to be in court, but there was nothing in the record of the proceedings in the circuit court to disclose this condition to that court when the judgment of October 1, 1910, was rendered.

It would be monstrous to say that a man whose mental and physical condition was such as to prevent him from appearing and making defense, should be bound by the terms of a plainly unjust and unconscionable judgment against him. The case of Bean, etc., v. Hoffendorfer Brothers, 84 Ky., 685, was one in which an action was instituted against a man of unsound mind, who had never been adjudged to be such, on certain street improvement warrants in the city of Louisville. The process was regularly served upon him and in his condition he paid no attention to it and judgment went by default, and the sale of his real estate was ordered and had, and the appellees in that case became the purchasers. More than nine years after the institution of the action, and after the death of the lunatic, his heirs at law brought a suit to vacate the judgment against him and to set aside the sale upon the ground that he was insane at the time the summons was served upon him, and continued to be up to the time of his death, and that none of his heirs knew of his ownership of the lots until after his death and a few days before the institution of the action. In discussing the same provisions of the code, the court in that case said:

"There is enough before us in this case to show that the mental condition of Isaac Smith does not appear in the record of the action of Thomasson & Hider against him; but unless the failure of the court to appoint someone to defend for him in that action be an error in the meaning of subsection 5, there was none up to the rendition of the judgment, for there is nothing before us to satisfactorily show that the claim of the plaintiffs in that action was unjust, or that a successful defense could have been made to it; but unavoidable casualty and misfortune preventing appearance and defense have always been

held by courts of equity sufficient grounds for not merely setting aside sales of property under judgment when great wrong has been done, but for setting aside the judgment and permitting the defendant to answer when he has a good defense, and makes the application in proper time.''

In the case of Ray v. Arnett, 166 Southwestern, 829, this court granted a new trial upon the sole ground that the attorney of the party had abandoned her case without her knowledge, not having given her any notice thereof.

It is perfectly apparent from this record that there has been no equitable adjustment of the claims pending between appellant and Ford's administrator, and that Elliott Ford, in the summer and fall of 1910, was in no physical or mental condition to have taken steps necessary to bring about a fair settlement.

The court upon the return of this case will enter a judgment vacating the judgment of October 1, 1910, and declaring the mortgages executed by Elliott Ford upon the trust property to be void, and after ascertaining the correct amount due appellant by Elliott Ford's estate, allow the same with interest as a general claim against it. In all other respects the judgment is affirmed.

The judgment is reversed for proceedings consistent herewith.