Meyer, Appellant, vs. Reif and another, Respondents.

*December 4, 1934—January 8, 1935.*

For the appellant there was a brief by *Wengert & Moeller* of Milwaukee, and oral argument by *Eugene Wengert*.

For the respondents there was a brief by *Wheeler & Witte* and *Lyman Edward Wheeler,* attorneys for Norma Reif, trustee, and by *Lyman G. Wheeler,* guardian *ad litem* for Miles Reif, all of Milwaukee, and oral argument by *Lyman G. Wheeler.*

FOWLER, J. The complaint alleges the recovery of a judgment in favor of the plaintiff for $4,750 against the defendant Miles Reif and a return of execution unsatisfied. It further alleges that a trust was created by the will of his grandmother for the benefit of the defendant Miles Reif, pursuant to which the county court by final decree assigned to Norma Reif and another, as trustees, a fund of $9,216.79, the income of which was to be devoted to the education and support of the defendant Miles until he should arrive at the age of twenty-five years, if he lived so long, and then the fund with any accumulations of income not expended for his support and education was to be turned over to him; and if he did not reach the age of twenty-five years, the fund was to go to his mother, Norma, if she were living at his death; and if Norma were not then living, it was to go to the heirs of the testatrix, whoever they might be at that time. The complaint prays for several specific kinds of relief, or such other relief as may be equitable to prevent the fund from being so disposed of by the defendants that it cannot be devoted to plaintiff's judgment in case the defendant Miles shall reach the age of twenty-five years.

The defendant Norma Reif is the sole surviving trustee of the fund. She and Miles answered the complaint admitting all the allegations of fact stated therein. Among the allegations of the complaint was one to the effect that Miles is the equitable owner of the fund and will become the absolute owner thereof upon arriving at the age of twenty-five years. The answer of Miles denies that he is the equitable owner of the fund, or interest therein, except as beneficiary of the income thereof for his support and education, and

alleges that he has no property out of which the plaintiff's judgment may be satisfied. The defendant trustee interposed a like answer. To these answers the plaintiff demurred, and the demurrers were overruled.

A demurrer to an answer for insufficiency of facts to constitute a defense "searches the record," and brings up the question whether the complaint states a cause of action. The allegation of the complaint next above stated is a mere conclusion of law from the facts stated. The allegations of the answer stated are mere denials of this conclusion of law. As no facts are denied in the answer, the effect of the order overruling the demurrer to it is that of an order sustaining a demurrer to the complaint for insufficiency of fact, and amounts to a holding that the complaint does not state a cause of action. So the real question at issue is whether the plaintiff is entitled to any relief upon the facts stated in his complaint, which was the issue in *Arzbacher v. Mayer,* 53 Wis. 380, 10 N. W. 440.

The plaintiff's right to recover is grounded on the general principles of equity applicable to creditors' bills and the *Arzbacher Case,* which construes sec. 3029, R. S. 1878, now sec. 273.02, Stats. This statute provides that whenever an execution is returned unsatisfied against a judgment debtor action lies to compel discovery of property belonging to the debtor or held in trust for him, and to prevent the transfer of any such property "except where such trust has been created by or the fund so held in trust has proceeded from some person other than the defendant [debtor] himself." The respondents claim that by reason of the exception above quoted, the plaintiff is not entitled to seize the fund or prevent its transfer. They contend that the defendant Miles has no vested interest in the fund and that it is therefore not subject to transfer or assignment.

In the *Arzbacher Case* corporate stock was by will bequeathed to trustees to pay the income to the widow of the testator during her life, and to turn the stock over to a son

upon her death. While the widow was still living, a creditor of the son brought a creditor's bill to set aside a transfer of the son's interest in the stock as in fraud of creditors, and to prevent its future transfer and to subject the stock to the satisfaction of his judgment upon the death of the widow. A demurrer to the complaint for insufficiency of facts was overruled by the trial court and affirmed on appeal. The basis of the holding of this court, as stated at page 391, of the opinion, was that the exception of the statute above cited "has no application to property which is held by a trustee for the benefit of a judgment debtor when, notwithstanding such trust, the judgment debtor has the absolute power of transferring, conveying, or assigning *his interest* in the property so held in trust." The opinion states that the statute was taken from the state of New York and that prior to its enactment here it had been construed as stated in the quotation above in *Hallett v. Thompson,* 5 Paige (N. Y.), 583, and many subsequent cases, and that in taking over the statute we took with it the construction given to it by the courts of New York prior to the time of its adoption by our legislature. *Williams v. Thorn,* 70 N. Y. 270, cited in the *Arzbacher Case,* states and discusses many of the New York decisions. From this opinion it appears that the sole purpose of the exception in the statute was to prevent an income secured by a trust for the support of a debtor from being taken to satisfy a judgment against him. Without this exception, this might have been done under a literal application of the statute. The effect of the exception in the statute was limited to accomplishment of its purpose. In the New York cases decided prior to our adoption of the statute it was many times held that where the income of a trust estate was given for the support of a debtor, any excess of income not reasonably necessary for such support could be applied under the statute towards satisfaction of a judgment against him. Thus any income of the fund in the instant case not reason-

ably necessary for the support and education of Miles could be applied to plaintiff's judgment in such a suit as was brought, but for the fact that the will provided that any such excess should be added to the principal of the fund and pass with it at termination of the trust. No reason is perceived why, in equity, application of the principal of the fund may not as well be compelled when it becomes payable to the debtor, if it does so become, as that any excess of income over necessities for support and education might be compelled but for the provision for adding any such excess to the principal of the fund.

The holding of the *Arzbacher Case* is to the effect that trust property held for the benefit of a debtor may·be applied to satisfaction of a judgment against him whenever his interest in the property is assignable. From this it follows that if the defendant Miles has an assignable interest in the fund in suit the plaintiff is entitled to ·such relief as will prevent its assignment, just as the plaintiff in the *Arzbacher Case* was entitled to such relief. The situation, if the defendant may by assignment transfer to another right to the fund when he becomes twenty-five years of age, if he reaches that age, is precisely the same as in the *Arzbacher Case,* and the plaintiff is entitled to whatever preventive relief the plaintiff in that case was entitled.

That the defendant has an assignable interest in the fund held for his benefit would seem to follow from sec. 231.19, Stats., which declares that "the rights and interests of every person for whose benefit a trust for the payment of a sum in gross is created are assignable." Here a sum in gross is held in trust for Miles. If more than this is needed to support the assignability of the interest of Miles in the fund, the following supplies it:

The opinion in the *Arzbacher Case* bases the right of the plaintiff therein, in part at least, as do the New York cases which it follows, upon the analogous proposition that as in-

terests in real estate after a life estate may be conveyed, so might the interest of the judgment debtor in the stock be assigned. It is stated that sec. 2059, Stats. 1878 (sec. 230.35, Stats. 1933), provides that "expectant estates are descendible, devisable and alienable in the same manner as estates in possession." Estates as respects the time of enjoyment are divided into estates in possession and estates in expectancy, and the latter are divided into estates commencing at a future day, denominated future estates and reversions. Secs. 230.10 and 230.12, Stats. 1933 (secs. 2034 and 2036, Stats. 1878). As all expectant estates are alienable, future estates, which are a class of expectant estates, are alienable. A future estate may be limited to commerce in possession at a future day, either without the intervention of a precedent estate or by the determination by lapse of time, or otherwise of a precedent estate, created at the same time. Sec. 230.10, Stats. (sec. 2034, Stats. 1878). Future estates are vested or contingent. They are vested when there is a person in being who would have an immediate right of possession of the lands, upon the ceasing of the precedent estate. They are contingent whilst the person to whom, or the event upon which, they are limited to take effect, remains uncertain. Sec. 230.13, Stats. 1933 (sec. 2037, Stats. 1878).

Much of the briefs herein is devoted to the question whether the interest of the defendant Miles in the principal of the fund is vested or contingent. The appellant contends that the interest is vested, and therefore assignable; the respondents contend that the interest is contingent; that as it is contingent, it cannot be assigned, and that as only assignable interests can be reached under the statute cited, under the rule of the *Arzbacher Case,* the interest of Miles cannot be reached. But whether the interest of Miles is vested or contingent is beside the case, for contingent interests may be conveyed as well as vested interests. As above stated, ex-

pectant estates are alienable; a future estate, which is a class of expectant estates, is therefore alienable. Were the fund land, the defendant Miles could convey his interest therein, whether it be regarded as vested or contingent. So, by analogy, may he assign his interest in the fund, whether it be vested or contingent.

It is stated in 3 Pomeroy, Equity Jurisprudence, § 1285, after saying that "modern English statutes have so far changed the common law as to permit the assignment *at law* of contingent and future interests, expectancies, and possibilities coupled with an interest in real estate," that "the American legislation has generally been broader, and authorizes the assignment at law of such future expectancies and possibilities, when coupled with an interest, whether connected with real or with personal estate." The future expectancy of Miles, even if considered as a possibility, is certainly coupled with an interest. The case of *Lawrence v. Bayard, 7* Paige (N. Y.), 70, is referred to in the text of Pomeroy as illustrating the type of statutes supporting the statement last above quoted. This case gives the statutes referred to as supporting the latter proposition. They are the same as our statutes above stated. It is, moreover, to the precise point that such an interest in personalty as is here involved is assignable. In that case shares of stock were by will bequeathed to trustees, to pay the income therefrom to L. during her life, and upon her death to turn it over to the then surviving eldest son of the testator. The eldest son of the testator was William. His receipt of the stock was contingent upon his surviving his brothers, just as the receipt of the trust fund by Miles is contingent on his becoming twenty-five years of age. William was living at the death of L. He had previously assigned his interest in the stock to H. H. brought a bill in equity to restrain William from transferring the stock and to restrain the trustees from turning it over to

William or to any other person. The assignment was upheld and relief as prayed was granted to the assignee. The opinion of the case, page 76, states:

"The revised statutes [the same as our statutes above stated], which were in operation when this sale was made, have declared in express terms, that expectant estates are descendible, devisable and alienable, in the same manner as estates in possession. (1 R. S. 725, § 35.) And by an examination of the several provisions of the revised statutes it will be seen that by the term 'expectant estates' the legislature intended to include every present right or interest, *either vested or contingent,* which may by possibility vest in possession at a future day. The mooted question, whether a mere possibility coupled with an interest is capable of being conveyed or assigned at law, is therefore forever put at rest in this state."

And it is further there pointed out that "there never was a doubt that any interest whatever in personal property, or a mere possibility coupled with an interest in real estate, was assignable in equity."

The proposition that the interest of Miles is transferable is supported by Restatement, Property (Tent. Draft No. 4), § 204: "The owner of any future interest in a thing other than land has the power, by an otherwise effective conveyance *inter vivos,* to transfer his interest or any part thereof."

So also as to land, *Ibid.* § 203, p. 32: "(1) The owner of any remainder or executory interest in land has the power, by an otherwise effective conveyance *inter vivos,* to transfer his interest or any part thereof." Executory interests in the above rule include contingent interests. *Ibid.* I to III, p. 33. The fact that the future interest may terminate before becoming possessory does not affect its transferability. *Ibid.* p. 34 c. The power of transfer exists, where it is possible that the interest will become possessory, although that it will become so is "most improbable." *Ibid.* p. 40 e.

That future interests in land though contingent are subject to seizure by creditor's bill, is declared in sec. 207 of the

Restatement cited, page 67, when such interest is one which the debtor has power to transfer when the seizure by the creditor is sought. From the notes appended to this section it appears that the method of application of future interests to the satisfaction of the judgments of creditors has ordinarily been by sale thereof, either on execution or pursuant to judgment on a creditor's bill. We find no case wherein injunctive relief has been granted, unless such relief was granted in the *Arzbacher Case, supra*. This case is cited in the notes in the Restatement cited, under sec. 207, page 141, under the heading "4. Future interests in things other than land," with the comment that it is *"dictum"* to the point that a future interest "is subject to execution sale despite futurity and interposed trust." The case holds (page 394) that the interest of the owner of the future interest is "subject to be applied to the payment of his debts as much as any other property owned by him." It is stated on page 395 of the opinion: "We see no reason why the same rule [that a future interest in real estate can be sold on execution] should not apply to the case of a trust in personal property." The final statement in the opinion is to the effect that the court was "in doubt" as to just what relief the plaintiff was entitled to, but as it appeared he was entitled to some relief, the demurrer to the complaint for insufficiency of facts was properly overruled. Restatement, Property (Tent. Draft No. 4), § 208, is to the effect that a future interest is subject to impoundment by garnishment or attachment. By our garnishment statute, sec. 267.17, a debt to a defendant, "due or to become due" is subject to application to the claim of his creditor. It would seem that the relief that should be granted to a plaintiff in equity in a situation such as is here involved is to adjudge a lien on the defendant's interest in the fund in the trustee's hands, enjoin the *cestui que trust* from assigning, pledging, or incumbering his interest therein, adjudge that in case the *cestui que trust* arrives at the age of twenty-five

years the trustee satisfy the plaintiff's judgment out of the fund before paying the fund or any part thereof over to the *cestui que trust* or any other person, and enjoin the trustee from paying over a portion of the fund sufficient to satisfy plaintiff's judgment in any other manner. As the briefs do not go to the kind of relief to be granted the plaintiff, the statement above made is subject to correction if upon authority or reason a better or more equitable form of relief may be suggested. The case is in equity, and equity "has . . . never placed any limits to the remedies which it can grant, either with respect to their substance, their form, or their extent; but has always preserved the elements of flexibility and expansiveness, so that new ones may be invented, or old ones modified, in order to meet the requirements of every case." 1 Pomeroy, Equity Jurisprudence, § 111. Equity has "power to enlarge the scope of the ordinary forms of relief, and even to contrive new ones adapted to new circumstances." *Ibid.* § 116. If the customary forms of relief do not fit the case, or a form of relief more equitable to the parties than those ordinarily applied can be devised, no reason is perceived why it may not be granted. It is said in *Harrigan v. Gilchrist,* 121 Wis. 127, 236, 99 N. W. 909:

". . . Though no precedent may be at hand in a given situation, since principles of equity are so broad that the wrong involved [or the right to be enforced] need not go without a remedy, its doors will swing open for the asking, and a new precedent be made."

To grant the relief above suggested would protect the plaintiff and be fairer to the *cestui que trust* than to sell his interest in the fund. A sale as ordinarily made on execution or pursuant to judgment would carry the interest in the fund and thus carry the whole fund when the *cestui que trust* arrived at the age of twenty-five, if he reached that age. The uncertainty of his arriving at that age would prevent

the bidding of an amount at all commensurate with the amount of the fund, and such a sale would be likely to work injustice to the *cestui que trust* through carrying the amount of the fund in excess of the amount due on the plaintiff's judgment. But the precise form of relief need not now be determined. It appearing that the plaintiff is entitled to subject the interest of Miles in the fund in the trustee's hands to the satisfaction of his judgment, this is sufficient to sustain the complaint and to rule the decision upon the demurrer to the answer.

*By the Court.*—The order of the circuit court is reversed, and the cause is remanded with directions to enter an order sustaining the demurrers to the answers and for further proceedings.