[No. 31929. *En Banc.* March 13, 1953.]

SEATTLE FIRST NATIONAL BANK, *as Trustee, Respondent,* v.
RHODA CROSBY, *Individually and as Trustee, et al.,*
*Appellants.*[1]

[1]Reported in 254 P. (2d) 732.

Merle D. Cohn, for appellants.

Holman, Mickelwait, Marion, Prince & Black and Burroughs B. Anderson, for respondent. .

Jacob Kalina (Michael S. Curtis, of counsel), guardian ad litem of Margaret Judith Crosby et al.

DONWORTH, J.—In this action, brought under § 4 of the declaratory judgment act, RCW 7.24.040, plaintiff trustee sought a declaration of rights and instructions with regard to certain assignments of principal and income of a trust made by William Shaw Crosby, the beneficiary thereof. From a judgment declaring that the trustee had no duty to honor any of the assignments and no right to honor the assignments of principal, all the defendants, except William Shaw Crosby, have appealed.

The allegations of the complaint (in which the documents material to this controversy were incorporated) were admitted by defendants. Thus, the following factual background is established:

The trust is one established pursuant to the will of Agnes H. Anderson, who died April 5, 1940. By her last will, executed September 24, 1937, Mrs. Anderson left certain property to William Shaw Crosby with the provision that

". . . if [William Shaw Crosby] . . . shall be under the age of Thirty-Five (35) Years when ultimate distribution of my . . . [Estate] is made, the . . . [property] so bequeathed to . . . [him] shall not be turned over or delivered to . . . [him] until he . . . attains the age of Thirty-Five (35) Years. Until such time

all such [property] shall, upon ultimate distribution as hereinabove referred to, be delivered to a trustee to be appointed by the executors of this Will by an instrument in writing duly executed by said executors . . . , such trustee to hold the same and to receive all dividends and income therefrom and *to pay over such part of such dividends and income as may be necessary or required for the education, support and maintenance of* . . . [*William Shaw Crosby*], and when . . . [he] shall have attained the age of Thirty-Five (35) Years all such . . . [property] and unused dividends and income shall be by said trustee turned over and delivered to . . . [William Shaw Crosby] . . . . If . . . [William Shaw Crosby] shall die before attaining the age of Thirty-Five (35) Years, the trustee shall distribute and deliver . . . [his] share to . . . [his] heirs at law." (Italics ours.)

The testatrix provided that her executors might postpone ultimate distribution of her estate for a period of time not to exceed five years from the date of her death. If William Shaw Crosby died without leaving a child or children surviving him, prior to the ultimate distribution of the estate, it was provided in the will that the devise and bequest to him should lapse. If, before the testatrix died, he died survived by issue living at the time of the testatrix' death and at the time of ultimate distribution, such child or children should take his share.

William Shaw Crosby (to whom we shall refer herein as Crosby) was born June 10, 1918. He was nineteen when the will was executed, twenty-one when the testatrix died, and will become thirty-five years of age, if living, on June 10, 1953.

Pursuant to the directions in the will, the executors of Mrs. Anderson's estate entered into a trust agreement with respondent on September 13, 1943, and delivered to respondent, as trustee, real and personal property then valued at $129,000, being Crosby's share of the estate. The pertinent terms of the trust agreement correspond to those of the will and empower the trustee:

"2. To collect and receive the income of the trust property and to pay over to or for the use of said William Shaw Crosby such part of said income (less the reasonable costs

of administration) as may be necessary or required for his education, support and maintenance.

"3. When and if said William Shaw Crosby attains the age of thirty-five (35) years, to pay over and deliver to him the whole amount of said trust property, and accumulated income (if any), less proper and reasonable costs of administering and closing said trust.

"4. In case said William Shaw Crosby dies before attaining the age of thirty-five (35) years, at his death to pay and deliver the whole of said trust property to his surviving heirs at law."

Crosby and appellant Rhoda Crosby intermarried at some time subsequent to the death of Mrs. Anderson. A daughter, Margaret Judith Crosby, was born of this marriage in 1945 and a son, Daniel Wechsler Crosby, in 1947.

Respondent, in determining the amounts necessary for the support and maintenance of Crosby, has taken into consideration not only Crosby's own needs, but the requirements of his family as well. In February, 1949, respondent was paying to, or for the use of, Crosby income from the trust at the rate of $1,125 per quarter, or $4,500 per annum.

On January 26, 1949, Crosby and Rhoda Crosby, who were residents of California, entered into a property settlement agreement, with the stipulation that it might be incorporated in a decree of divorce obtained by either.

In the settlement agreement, Crosby agreed, among other things, to pay to Rhoda Crosby four hundred dollars per month until distribution of the trust, of which sum two hundred sixty dollars was for the support and maintenance of the two minor children and one hundred forty dollars for the support of Rhoda Crosby. In this agreement, he purported:

(1) To assign to Rhoda Crosby, *as security for the $400 monthly payments,* all of the payments made by respondent trustee to which he is entitled, not to exceed, however, $4,800 per annum.

(2) To assign to Rhoda Crosby, individually, thirty per cent of his interest in the trust corpus.

(3) To assign to Rhoda Crosby and Leah Rachel Holmes, as trustees for the two minor children under the terms of a

trust set forth in the property settlement agreement, forty per cent of his interest in the trust corpus.

By this property settlement agreement, each party relinquished his or her right to share in the estate of the other, except as a creditor under the agreement. They also agreed that Rhoda Crosby should have sole custody of the two children, with Crosby "to have reasonable rights of visitation only upon approval of competent medical authority."

This agreement was incorporated in an interlocutory judgment of divorce obtained by Rhoda Crosby in the superior court of Los Angeles county, California, on March 11, 1949.

Respondent trustee was not a party to the divorce action, nor were any of the trust assets situated in California. Crosby appeared in the divorce action but did not contest it. The record does not reveal whether a final decree of divorce has been entered, although one could be procured at any time subsequent to March 11, 1950.

On February 7, 1949, Crosby executed, "pursuant to the terms of" the property settlement agreement, two separate instruments wherein he assigned (1) his interest in the trust income, not to exceed $4,800 per annum, and thirty per cent of his interest in the total trust property to Rhoda Crosby; and (2) forty per cent of his interest in the total trust property to Rhoda Crosby and Mrs. Holmes, as trustees for the two Crosby children.

The part of the assignment to Rhoda Crosby, relating to trust income, is qualified only as to amount (not to exceed $4,800 per annum); it contains nothing other than its reference to the property settlement agreement which indicates that it is intended only as collateral security for Crosby's promise to pay her four hundred dollars per month. The part relating to assignment to her of thirty per cent of Crosby's interest in the trust recites that it covers thirty per cent of the value of the total trust property to be distributed "upon the expiration and termination of said Trust, i. e., when I attain the age of thirty-five (35) years." The same language is employed in the assignment of forty per

cent·of Crosby's interest in the total trust property to Rhoda Crosby and Mrs. Holmes, as trustees for the children. In each of the assignments, Crosby declared that "it is my intent that this assignment shall not be and it is not revocable."

On February 26, 1949, Rhoda Crosby, individually and as trustee, and Leah Rachel Holmes, as trustee, caused executed copies of the assignments to be served upon respondent trustee, together with notices that they requested and required the trustee "in due course to pay the same to us when payable." A copy of the California divorce decree, which had incorporated in it the property settlement agreement, was also furnished to respondent.

On January 31, 1950, respondent brought this action, setting out the foregoing facts in its complaint and praying that its rights, liabilities, and duties be determined. It specifically sought instructions as to whether it had the duty or right to comply with the assignments of income or principal, and if so, in what manner and degree. It also asked that, in the event it had the duty or right to comply with the assignments, the court instruct it as to how it should be guided in determining the amounts of income, if any, to be paid to Crosby and Rhoda Crosby. Respondent also prayed that it be awarded, from the income of the trust, a fee for its own services and those of its attorneys.

Jacob Kalina, a member of the bar, was appointed by the court February 14, 1950, to act as guardian *ad litem* for the two Crosby children. Nevertheless, all of the defendants, including the two children and Crosby, appeared by the same counsel and filed a joint answer to the complaint. They admitted all the allegations thereof and alleged that the will of Mrs. Anderson and the trust agreement did not prohibit Crosby from assigning his interest in the trust estate or the income therefrom. They prayed that the court declare the assignments to be valid instruments which put upon the trustee the liability and duty, or, if not the duty, then the right, to comply therewith. They further prayed that they be awarded a reasonable fee for their attorney and the guardian *ad litem*.

The guardian *ad litem* also filed an answer, in which he prayed for general equitable relief.

At the trial of this case, which was held April 5, 1951, before the court sitting without a jury, no evidence was introduced. The proceedings consisted solely of legal arguments on behalf of the parties. The only issue of fact was the intent of the testatrix in making provisions in her will relating to Crosby. On June 4, 1951, the court handed down its memorandum opinion. Findings of fact, conclusions of law, and a judgment were entered July 25, 1951. As above stated, all defendants except Crosby have appealed to this court.

The trial court, in its findings, after having set forth the pertinent parts of the will, found as facts the following:

"V

". . . . . . .

"It is apparent from the above that the testatrix

"1. Determined that a legatee dying without children prior to distribution should take nothing; she was not interested in any widow;

"2. Determined that the children of any deceased legatee should take the share of the deceased legatee;

"3. Determined that William Shaw Crosby, nineteen years old when the will was signed, should be *educated, supported* and *maintained* until thirty-five years of age; she intended that he should be without financial worry until he had lived long enough to care for his legacy; she set the age at thirty-five for that reason.

"4. Determined that this beneficiary has no presently transferable interest in the income or corpus of this estate."

The court also found that, in serving the assignments and notices thereof upon the trustee, appellants had imposed upon the trustee difficult legal problems which vexed and harassed it, interfered with its management of the trust, and required that it commence this action. The court concluded that the trust was one for support, and that the trustee was not bound by the California divorce judgment.

In answering the specific questions raised by respondent, it concluded that Crosby has no assignable interest in the income or principal of the trust; that respondent is not

required to comply with any of the assignments; that it is not to be harassed by the beneficiary (Crosby) with respect to the assignments of income and principal; that it is respondent's duty to execute the directions of the testatrix and not those of the beneficiary; and that respondent has no right to comply with the assignments of principal.

The court also concluded that respondent may, with the written consent of the beneficiary, and after payment to him of an amount which the trustee determines in its discretion to be sufficient for his education, support, and maintenance, pay from the trust income for the maintenance of the two children a reasonable sum consistent with the station in life heretofore established by the beneficiary.

The judgment, with one exception hereinafter noted, followed these conclusions and awarded fees to respondent, its attorneys, and the guardian *ad litem*. Defendants were denied any allowance for attorneys' fees or costs from the trust.

Appellants have assigned error to the findings of fact hereinabove set forth, and to the finding that the assignments harassed respondent and interfered with its management of the trust. Appellants have also assigned error to the court's conclusions of law and judgment and its denial of an allowance for costs and a reasonable attorney's fee from the trust income.

These assignments of error raise four questions:

1. Does RCW 6.32.250 (Rem. Rev. Stat., § 637) have any application to the facts of this case?

2. Under the terms of the will and the trust agreement, does the beneficiary have an interest in either trust income or principal which is assignable by him?

3. If not, may the trustee nevertheless pay to or for his divorced wife and/or children an amount from the trust income reasonably necessary for her and/or their support?

4. Under the facts of this case, are appellants entitled to an allowance of costs and a reasonable attorney's fee from the income of the trust?

Before discussing these questions, it should be noted that

appellants make no contention that the California divorce judgment has any binding effect upon respondent. Since the trustee was not a party to the California divorce proceeding, it is not affected by the judgment rendered therein.

We shall first consider whether service of the assignments and notices on the trustee constituted harassment of the trustee and interference with its management of the trust, which is within the prohibition of RCW 6.32.250, as interpreted in *Knettle v. Knettle,* 197 Wash. 225, 84 P. (2d) 996.

Regardless of our interpretation in the *Knettle* case that the statute was designed to prevent interference by creditors of beneficiaries in the management of trust estates, it cannot be denied that the practical effect of the statute has been to clothe every active trust with statutory spendthrift provisions, at least in so far as attempts by creditors of a beneficiary to reach his interest by legal process are concerned. (While it has no application to this case, we note that the protection afforded by the statute to beneficiaries has been curtailed by RCW 30.30.120, enacted in 1951.)

RCW 6.32.250 appears to have been derived from a New York statute adopted in 1828. See Griswold on Spendthrift Trusts (2d ed.), §§ 61 through 74, 78, 230 and 230.1. It was enacted in this state in 1893 as § 25 of "An Act relating to proceedings supplemental to execution," and reads as follows:

"This act does not authorize the seizure of, or other interference with, any property which is expressly exempt by law from levy and sale by virtue of an execution, or any money, thing in action or other property held in trust for a judgment debtor where the trust has been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor; . . ." Laws of 1893, chapter 133, § 25, p. 441.

The present action is one brought by the trustee for the purpose of having its rights and duties determined relating to voluntary assignments of trust income and principal made by the beneficiary.

While the assignments are also part of a property settlement agreement, which has been incorporated in a divorce

judgment entered by the California court, no attempt has been made to obtain any judgment in this state. Even if we assume as a fact that the assignments, by stipulation of the parties thereto, have become a judgment in California, that fact cannot divest them of their voluntary character in this case, since the assignees are not in this action attempting to enforce any judgment.

We are of the opinion that RCW 6.32.250, relating to proceedings supplemental to execution, can have no application to the facts of this case.

It is to be noted that the assignment of the income is, according to the property settlement agreement, merely collateral security for Crosby's promise to pay Rhoda Crosby the sum of four hundred dollars per month. If he is not in default in respect to these monthly payments, there would be no occasion for resorting to the collateral. The record does not indicate whether he was in default when this action was commenced. If not, the validity of this assignment of income would be a moot question. We assume, as all parties appear to assume, that there is such default and that the collateral must be resorted to in order to enforce Crosby's promise.

The trust is one for support from income only, and the beneficiary has no interest in the income which he can assign. Professor Griswold in his work on Spendthrift Trusts, § 431 at page 506, states the rule as follows:

"Where a trustee is to pay to the beneficiary as much as is needed for the latter's maintenance or support, the trust combines several elements. It involves a certain amount of discretion on the part of the trustee. This does not, however, amount to a complete discretion, as the trustee must, within the limits of the trust property, furnish support to the beneficiary whenever such support is necessary. In the second place, a trust for support with the interest of the beneficiary limited to the sums needed for that purpose has many of the characteristics of a personal trust. The beneficiary's needs are a purely personal standard; payment to a creditor or assignee of the beneficiary will not satisfy his needs.

"Such a trust is not strictly a spendthrift trust, because it does not involve an interest absolutely owing to the beneficiary, but subject to express restraints on alienation. The

limitation of the extent of the beneficiary's interest, however, shows with relative clarity the intention of the settlor that the interest should be inalienable. Accordingly the courts have held quite uniformly that the interest of the beneficiary of such a trust is not subject to his voluntary alienation and cannot be reached by his creditors."

The following cases from other jurisdictions are in accord: *In re Keeler's Estate,* 334 Pa. 225, 3 A. (2d) 413, 121 A. L. R. 1301; *Epstein v. Corning,* 91 N. H. 474, 22 A. (2d) 410; *In re Tompkins,* 28 Misc. 351, 59 N. Y. S. 902; *Holmes v. Bushnell,* 80 Conn. 233, 67 Atl. 479; *Mitchell v. Choctaw Bank,* 107 Miss. 314, 65 So. 278. See, also, 1A Bogert on Trusts and Trustees (1951 ed.) 513, § 226; 1 Scott on Trusts (1939 ed.) 770, § 154; Restatement, Trusts, 379, § 154.

The trial court correctly determined that respondent is not required to comply with the assignment of income.

Before discussing the assignments of principal and accumulated income, we shall first consider a question which apparently was not raised in the trial court.

█ We have frequently said that, in actions brought under the declaratory judgment act, there must be an actual existing controversy between parties having opposing interests, which interests must be direct and substantial and involve an actual, as distinguished from a possible or potential, dispute. The act may not be used for the purpose of obtaining purely advisory opinions. *Conaway v. Time Oil Co.,* 34 Wn. (2d) 884, 210 P. (2d) 1012, and cases cited.

██ If Crosby should die before attaining the age of thirty-five there would be no occasion to pass upon the validity of the assignments of principal and accumulated income. Therefore, it is possible, though not probable, that the controversy as to respondent's questions Nos. 3, 4, 5 and 6 will never need to be judicially determined. However, because of the delay in bringing this action to trial (it was commenced January 31, 1950), the time for termination of the trust (June 10, 1953) is now but a few months away.

It seems to us proper that respondent as trustee should be instructed in this action as to who now holds title to the vested remainder (the trust principal and accumulated

income) rather than compel the parties to institute another action in a few months to determine that question.

In Borchard on Declaratory Judgments (2nd ed.) 423, the learned author makes the following pertinent observation:

"The general survey in this chapter will have indicated that the courts no longer hesitate, even in England, to declare legal relations to become active in the future, provided there is a tangible present interest in their determination and a useful purpose is thereby served."

In *National City Bank v. Waggoner*, 230 App. Div. 88, 243 N. Y. S. 299 (affirmed 175 N. E. 298), the court said:

"A declaratory action ought, in equity, to give real relief, so that a second independent suit need not be required to be brought, when all matters can be litigated in one action, as here, in an accounting which might follow the proof. Such has been the construction placed upon this section."

See, also, *In re Slattery's Estate*, 132 Misc. 319, 230 N. Y. S. 267 (affirmed 234 N. Y. S. 896).

Since the interests claimed by the assignees, as we shall presently see, are now vested, subject to complete defeasance should Crosby fail to attain the age of thirty-five years, we are of the opinion that the rights and obligations of the parties with respect to these assignments of principal and accumulated income should be declared in this suit despite the possibility of defeasance.

In deciding whether respondent has the duty or right to comply with the assignments of principal, the trial court properly turned to the will for the purpose of determining the intention of the testatrix. In considering instruments creating trusts, the sole object of the courts is to ascertain the purpose of the settlor and to effectuate that purpose in so far as it is consistent with rules of law. *Old Nat. Bank & Union Trust Co. v. Hughes*, 16 Wn. (2d) 584, 134 P. (2d) 63.

Except for the purported assignments of principal, there can be no question that Crosby will acquire complete ownership of the principal and accumulated income when and if he attains age thirty-five. Prior to that time (June 10, 1953), his interest therein is a vested remainder, subject

to complete defeasance if he dies before then, and is freely alienable unless the testatrix placed valid restraints upon his right to alienate. Restatement, Property, Future Interests, 541, § 157; and 587, § 162. *Gillogly v. Campbell,* 52 Ohio App. 43, 2 N. E. (2d) 620; *Hans v. Safe Deposit & Trust Co.,* 178 Md. 52, 12 A. (2d) 208; *Meyer v. Reif,* 217 Wis. 11, 258 N. W. 391; *Bank of Taylorsville v. Vandyke,* 159 Ky. 201, 166 S. W. 1024.

The trial court adopted, and respondent urges, the view that implicit in the will of Mrs. Anderson are spendthrift provisions relating to principal and accumulated income. Respondent concedes that the will does not expressly restrain alienation but argues that, in setting age thirty-five as the time for termination of the trust, Mrs. Anderson evidenced an intention to protect the beneficiary from financial worries and from dissipating his estate before he attained an age commonly regarded as mature. If such was her intention, she failed to state it expressly.

Respondent also relies upon *B. F. Goodrich Co. v. Thrash,* 15 Wn. (2d) 624, 131 P. (2d) 734, where we determined that real estate held under the terms of an active testamentary trust was not subject to attachment by a creditor of a beneficiary. There were more than twenty beneficiaries of the trust. The trustees were vested, during the life of the trust, with an absolute discretion to pay to, or withhold from, the debtor beneficiary any payments. The will provided that, upon termination of the trust, the real estate sought to be attached should be liquidated or converted into money, which would then be distributed. It is clear that the debtor beneficiary had no interest in the real estate, as such, going to make up the corpus of the trust estate. The language used, that the beneficiary had no vested interest in the trust corpus, was not necessary to the decision. For the foregoing reasons, it is apparent that the *Goodrich* case is not in point.

Respondent has cited no case in support of its contention that the principal is protected by implied spendthrift provisions in the will, and that the beneficiary's interest is

therefore not assignable. Our own research has disclosed only one case which has proceeded upon such a theory: *Southern Nat. Life Ins. Co. v. Ford's Adm'r,* 151 Ky. 476, 152 S. W. 243.

The language of the will in that case, interpreted in the light of the circumstances surrounding the testator and the sole legatee (his only child), readily bears an interpretation that the beneficiary's right to alienate or encumber his interest in the corpus was intended by the testator to be restrained until termination of the trust.

We have examined the following decisions (cited by appellant) which have upheld the beneficiary's right to alienate his interest in the trust corpus under a will containing provisions similar to that of Mrs. Anderson: *In re Hall's Estate,* 248 Pa. 218, 93 Atl. 944, 2 A. L. R. 855; *Meyer v. Reif, supra; Heise v. Wells,* 211 N. Y. 1, 104 N. E. 1120; *West v. Burke,* 219 N. Y. 7, 113 N. E. 561; *Perabo v. Gallagher,* 241 Mass. 207, 135 N. E. 113; *Estes v. Estes,* 267 S. W. (Tex.) 709.

In none of these cases is there any discussion as to whether there was in the will an implied restraint upon alienation of principal.

*Epstein v. Corning, supra* (cited by respondent as to the nonassignability of income), is another case where the right of the beneficiary to alienate his interest in the corpus was upheld.

Mrs. Anderson's reasons for choosing age thirty-five as the time for termination of the trust are not stated in her will. The admitted facts throw little light upon our problem. It seems to us as reasonable to conclude that she merely intended the beneficiary to have an adequate income until he reached an age of greater earning capacity as it is to follow the argument advanced by respondent.

The vesting of estates and the right to alienate property are favored in law. *Mears v. Lamona,* 17 Wash. 148, 49 Pac. 251. Restraints upon alienation are not favored and it must clearly appear that such was the intent of the testator. *Brooks v. Davis,* 82 N. J. Eq. 118, 88 Atl. 178; *Grand*

*Island Trust Co. v. Snell,* 125 Neb. 148, 249 N. W. 293; *Eastman v. First Nat. Bank,* 87 N. H. 189, 177 Atl. 414; *Newsom v. Barnes,* 282 Ky. 264, 138 S. W. (2d) 475; 41 Am. Jur., Perpetuities and Restraints on Alienation, 114, § 74.

▮ Mrs. Anderson's will does not reasonably support an inference that she intended a restraint upon the beneficiary's right to alienate his interest in the trust corpus and accumulations.

In view of this conclusion, we need not determine whether an attempted restraint upon Crosby's right to alienate his vested interest in the principal and accumulations would be void. See Restatement, Trusts, 377, § 153; 1 Scott on Trusts (1939 ed.) 768, § 153.3; 119 A. L. R. 33.

The trial court erred in finding that Crosby's interest in the corpus was not assignable by him and in declaring that respondent had neither the duty nor the right to comply with the assignments of principal and accumulated income.

The trustee is required to comply with the assignments of principal and accumulations on June 10, 1953, if Crosby be then living.

At this point, we note the suggestions made by the guardian *ad litem* that in the event the assignment of principal and accumulations to the trustees for the Crosby children be held valid, this court should take steps to safeguard the children's interests, which, he claims, are inadequately protected under the trust provisions contained in the property settlement agreement. That agreement, including the trust for the Crosby children, has been approved by the California court and incorporated in its judgment. The children, their parents, and their trustees are residents of California. The California court had the power to make such provision for the support of the children as it saw fit.

Under these circumstances, we have no jurisdiction to interfere in the creation of the California trust, regardless of whether the interests of the children may be jeopardized thereby.

We next consider the third question posed by respondent: whether, irrespective of the purported assignment of

income, the trustee *may* pay to or for the divorced wife and/or the children an amount from trust income reasonably necessary for her and/or their support.

The portion of the judgment which answered respondent's question as to whether it had the *right* to comply in whole or in part with the assignment of income reads as follows:

"II

"Plaintiff has the right and privilege but no duty to comply with provisions of the Notice of Assignment and the Assignment of Income and Principal for Rhoda Crosby which relate to income from the William Shaw Crosby trust established pursuant to the Will of the late Agnes H. Anderson. This privilege of the trustee is independent of any assignment by the beneficiary.

"The manner of making any such payments as the plaintiff may choose to make shall be as follows: Plaintiff has no duty to maintain the beneficiary's family. However, after payment to the beneficiary of such an amount as the trustee may determine to be sufficient for the beneficiary's support, maintenance and education, and, after having procurred the beneficiary's written consent, plaintiff shall have the right and privilege but not the duty to deliver to the beneficiary, on whom rests the duty of family support, an additional sum to be used for the maintenance of Rhoda Crosby or for the maintenance of Margaret Judith Crosby and Daniel Wechsler Crosby, or either. If paid, the additional sum shall be derived from the current net income of the trust after payment to the beneficiary of the current sum necessary for his support, maintenance and education."

In thus providing for Rhoda Crosby as well as the children, and in declaring the right of respondent to comply with the assignment of income, the judgment goes far beyond the corresponding conclusion of law (No. 3), which makes no mention of the divorced wife nor of the trustee's right to comply therewith.

But, before proceeding to review this part of the judgment, it is necessary that we set forth the position taken by the several parties on this phase of the case.

Respondent merely seeks to have the judgment affirmed; it has not cross-appealed. The guardian *ad litem,* who has employed his own counsel, has not appealed; he makes no

assignments of error and, as to this question, assumes a position which may be described as neutral. Rhoda Crosby, and ostensibly the children themselves, complain because the judgment requires the trustee, if it should choose to comply with the assignment of income, to do so only with the written consent of Crosby and to make payments direct to him. Mrs. Crosby advances the following arguments:

1. Under a proper interpretation of the will, the support of the beneficiary includes the support of the children and the divorced wife.

2. In accordance with the principle of law stated in the Restatement, Trusts, 390, § 157a, the trustee has at least the *right* to comply with the assignment of income for the support of the children and the divorced wife.

3. In accordance with the principle of law stated in the Restatement, Trusts, 382, § 154f, the trustee has at least the *right* to comply with the assignment of income to the extent of paying to the children and the divorced wife surplus income not required for Crosby's support.

These three arguments favor not only the children but Rhoda Crosby as well. The children, as heirs at law of Crosby, have by the terms of Mrs. Anderson's will a contingent interest in the principal and accumulated income. To that extent, at least, their interests conflict with those of their mother. The children's interests have been protected by the appointment of the guardian *ad litem*. Under such circumstances, we think that Rhoda Crosby is disqualified from speaking for the children in this case.

While the guardian *ad litem* does not complain of the portion of the judgment set out above, we nevertheless deem it our duty to declare the children's rights on this appeal. *In re Deming*, 192 Wash. 190, 73 P. (2d) 764.

Taking up first the right of the children to be supported from trust income, we are of the opinion that Rhoda Crosby's first argument is valid as to the children. The terms of the will clearly indicate that the testatrix contemplated that the beneficiary might marry and have children. The trustee has in the past properly taken into

consideration the needs of Crosby's family in fixing the amount of the payments to him. Regardless of the divorce, the children are part of his family and are entitled to a reasonable maintenance from the trust income. *Eaton v. Eaton,* 81 N. H. 275, 125 Atl. 433, 35 A. L. R. 1034; *Eaton v. Eaton,* 82 N. H. 216, 132 Atl. 10; 1 Scott on Trusts (1939 ed.), 789, § 157.1. They are entitled to such support *with or without the beneficiary's consent,* and payments therefor need not be made to Crosby but may be made directly for the children's benefit if the trustee, in its discretion, deems such course to be for their best interests. In view of our interpretation of the will, we need not, with reference to the children, consider whether the second and third arguments set out above are valid, because their right to support exists by virtue of Mrs. Anderson's will independent of any assignment of income.

 As to the claim of the divorced wife for support from the trust, the authorities are in serious conflict. See *Burrage v. Bucknam,* 301 Mass. 235, 16 N. E. (2d) 705, and *Schwager v. Schwager,* 109 F. (2d) 754, where many of the cases on both sides of the question are collected; 35 A. L. R. 1035; 52 A. L. R. 1259; 104 A. L. R. 779.

We believe, however, under the facts of this case, that Rhoda Crosby is not in a position to successfully advance the three arguments she makes. For a valuable consideration under the terms of the property settlement agreement, she has voluntarily relinquished all her marital property rights and has relegated herself exclusively to the position of a creditor. In view of that fact, her claim for support cannot be deemed to be part of the support of the beneficiary. She has waived any possibility of urging upon us the appealing equities which have led many courts to invade a spendthrift or support trust for the maintenance of a divorced wife. Nor can she bring herself within the scope of her third argument, since the children have a contingent interest in the undistributed income which is given them by the terms of the will itself and is not derived through the beneficiary.

In summation, we hold that: (1) The trustee has no duty or right to comply with the assignment of income to Rhoda Crosby. (2) As part of the beneficiary's support contemplated in Mrs. Anderson's will, after payment to Crosby of an amount determined by the trustee to be reasonably necessary or required for his education, maintenance, and support, the trustee shall pay from income such amount as it determines to be reasonably necessary or required for the education, support, and maintenance of the Crosby children. Such payments shall be made regardless of Crosby's consent or lack of consent and may be made directly for the children's benefit. (3) The assignments of principal are valid, subject only to the condition that Crosby must be living on June 10, 1953.

With respect to the remaining question presented by this appeal, we are of the opinion that the trial court did not err in denying appellants an allowance from the trust income of a reasonable attorney's fee. Appellants are, however, entitled to an allowance of their statutory costs in the superior court. *Chapin v. Collard*, 29 Wn. (2d) 788, 189 P. (2d) 642.

Accordingly, we make the following disposition of this appeal:

Question No. 1 submitted to the trial court was as follows:

"Under the provisions of the Will of Mrs. Anderson and the Trust Agreement, is the Trustee required to comply in whole or in any part with those provisions of the Notice of Assignment and the Assignment of Income and Principal for Rhoda Crosby which relate to the income from the trust established pursuant to the Will of Mrs. Anderson, and if so, in what manner and degree?"

Its negative answer and its judgment entered with respect to that question is hereby affirmed.

Questions Nos. 2 to 7, inclusive, were as follows:

2. "If the answer to question No. 1 is in the negative, does the Trustee have the right, under the provisions of the Will of Mrs. Anderson and the Trust Agreement, to comply in whole or in any part with those provisions of the Notice of Assignment and the Assignment of Income and Principal for Rhoda Crosby which relate to the income from the trust

established pursuant to the Will of Mrs. Anderson, and if so, in what manner and degree?"

3. "Under the provisions of the Will of Mrs. Anderson and the Trust Agreement, is the Trustee required to comply in whole or in any part with those provisions of the Notice of Assignment and the Assignment of Income and Principal for Rhoda Crosby which relate to the principal of the trust established pursuant to the Will of Mrs. Anderson, and if so, in what manner and degree?"

4. "If the answer to question No. 3 is in the negative, does the Trustee have the right under the provisions of the Will of Mrs. Anderson and the Trust Agreement to comply, in whole or in any part, with those provisions of the Notice of Assignment and the Assignment of Income and Principal for Rhoda Crosby which relate to the principal of the trust established pursuant to the Will of Mrs. Anderson, and if so, in what manner and degree?"

5. "Under the provisions of the Will of Mrs. Anderson and the Trust Agreement, is the Trustee required to comply, in whole or in any part with the Notice of Assignment and the Assignment of Principal for the Children, and if so, in what manner and degree?"

6. "If the answer to question No. 5 is in the negative, does the Trustee have the right under the provisions of the Will of Mrs. Anderson and the Trust Agreement to comply, in whole or in any part with the Notice of Assignment and the Assignment of Principal for the Children, and if so, in what manner and degree?"

7. "If the answer to either of questions Nos. 1 or 2 is in the affirmative, by what standard is the Trustee to be guided in determining the amounts of income, if any, to be distributed to William Shaw Crosby and the amounts of income, if any, to be delivered to Rhoda Crosby under normal circumstances, and, also, in the event that, at some time during the future life of the trust, the income from the Trust does not equal Forty-eight Hundred Dollars ($4,800) per annum and William Shaw Crosby should become ill or disabled without other income?"

As to the trial court's answers to these six questions and its judgment with respect thereto, the judgment is reversed and the cause remanded with instructions to enter findings of fact, conclusions of law, and a judgment consistent with the views expressed herein.

Respondent, appellants, and the guardian *ad litem* shall recover from the income of the trust their costs on this appeal.

■ The guardian *ad litem* shall recover from trust income a reasonable attorneys' fee for services in this court, the amount thereof to be fixed by the trial court. *Monroe v. Winn,* 19 Wn. (2d) 462, 142 P. (2d) 1022.

It is so ordered.

GRADY, C. J., MALLERY, HILL, HAMLEY, FINLEY, and WEAVER, JJ., concur.

OLSON, J. (dissenting in part)—I cannot agree that we should pass upon the validity of the assignments of trust principal and accumulated income (the vested remainder) in this case. Regarding that issue, this action is premature, and any opinion expressed upon it is purely advisory.

The date an action is commenced, and not the date of final judgment, should govern its maturity. This action was started January 31, 1950. The assignments in question cannot be effective until June 10, 1953, the thirty-fifth birthday of Crosby, the assignor. If he does not survive that date, the interests of the assignees are subject to complete defeasance. In that event, all questions regarding the assignments will be moot. No one has or can have a tangible present interest in the determination of their validity while the possibility of defeasance exists.

Further, Crosby, the assignor, if he survives June 10, 1953, may honor the assignments to the satisfaction of all parties and thus prevent any controversy regarding them. His nonaction in the case at bar seems to indicate that such a result is probable.

SCHWELLENBACH, J., concurs with OLSON, J.